# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 06-2493 JB

DWAYNE CUNNINGHAM,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Objections to the Presentence Report, filed November 13, 2007 (Doc. 41)("Objections").  The Court held a sentencing hearing on December 17, 2007.  The primary issues are: (i) whether Defendant Dwayne Cunningham is subject to a mandatory minimum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e); and (ii) whether his base-offense level was properly increased under U.S.S.G. § 2K2.1(b)(6).  In support of his contention that neither the ACCA nor the enhancement is applicable, Cunningham makes a number of objections to the Presentence Investigation Report ("PSR"): (i) that the Court has insufficient documentation concerning the definition of a sawed-off shotgun under South Carolina law to determine whether Cunningham's firearm possession was a violent felony; (ii) that the sawed-off shotgun conviction is not a violent felony because Cunningham was a juvenile at the time; (iii) that his conviction for attempted burglary is not a violent felony because he pled guilty to violating a statute entitled "Entering house or vessel without breaking or entering with intent to steal"; (iv) that he was not sentenced to six years for the attempted burglary conviction; (v) that the burglary and attempted-burglary charges are part of the same continuing offense and cannot be treated as separate and distinct felonies under the ACCA; (vi) that he was not represented by an

attorney when he entered his plea of guilty to the charges of attempted burglary and burglary, and thus those convictions cannot be treated as predicate offenses under the ACCA; and (vii) that there is insufficient evidence that he possessed a firearm in connection with another felony offense. The Court will overrule all of Cunningham's objections, except for his objection to the PSR classifying his "attempted burglary" conviction as a violent felony. The Court will sustain that objection. Accordingly, Cunningham has only two violent felony convictions and is not subject to the ACCA mandatory minimum sentence. Cunningham's base-offense level, however, was properly increased 4 levels under U.S.S.G. § 2K2.1(b)(6).

## FACTUAL BACKGROUND

While Cunningham has a lengthy criminal history, the disputes about his sentencing center on three prior crimes of which he was convicted in 1986. The PSR describes how Cunningham was previously convicted of three relevant offenses in South Carolina: (i) Possession of a sawed-off shotgun (Docket No. 86-GS-45-21) in the Williamsburg County Court of General Sessions, Kingstree, South Carolina; (ii) Burglary (Docket No. 86-GS-26-1697); and (iii) Attempted Burglary (Docket No. 86-GS-26-1700), both in the Court of General Sessions, Charleston County, South Carolina. See PSR ¶ 16, at 5 (disclosed November 2, 2007). Most of Cunningham's objections concern whether these convictions can be counted as predicate offenses under the ACCA. Cunningham also objects to the PSR's applying a 4-level enhancement under § 2K2.1(b)(6) of the Sentencing Guidelines for possessing a firearm in connection with another offense.

### 1.    Cunningham's South Carolina Sawed-off Shotgun Conviction.

According to the PSR, on September 11, 1985, an officer with the Kingstree Police Department observed Cunningham on a street corner, holding a black bag. The officer was suspicious, so he approached Cunningham and asked him what was in the bag. Cunningham

admitted he had a sawed-off shotgun in the bag, and the officer arrested him.  See PSR ¶ 34, at 9.

At the time of the offense, Cunningham was seventeen-years old, and he was sentenced under the South Carolina Youthful Offender Act ("YOA").   He was originally sentenced to six years in the custody of the South Carolina Department of Corrections, suspended.  On December 10, 1986, his YOA sentence was revoked for failing to report, failing to pay a fine, and not following his probation officer's advice and instructions.  He was then sentenced to five years of probation. See PSR ¶ 34, at 9.

### 2.    Cunningham's Two South Carolina Burglary Convictions.

Cunningham committed two offenses, burglary and attempted burglary, at the Boardwalk Motel, located in Myrtle Beach, South Carolina.  On October 17, 1986, he entered room 118 of the motel.  The room had a female occupant who woke up and saw Cunningham crawling along the floor.  Cunningham fled the scene.  See PSR ¶ 36, at 11.  On October 18, 1986, Cunningham tried to enter two different rooms at the motel, room 122 and room 222.  He was observed as he went about trying to enter the rooms, and was apprehended after jumping from the balcony of room 222. See id.

Cunningham testified at his sentencing hearing that there was only a short period of time between the burglary and the attempted burglary.  He said that the first, the burglary, happened around 11:45 p.m., while the second, the attempted burglary, occurred about 15 minutes later, around midnight.   See Transcript of December 17, 2007 Hearing at 52:7-20 (Padilla, Cunningham)("Tr.").[1]  Although his testimony is unclear, it also appears that Cunningham stated that the attempted burglary resulted from his efforts to get from one balcony to another balcony in

_____

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the motel, but that he never had an intention of burglarizing both of the rooms whose balconies he touched.  See id. at 53:25-54:17 (Walsh, Cunningham).

Cunningham pleaded guilty to both burglary and attempted burglary.  See id. at 55:21-22. The PSR states that "[a]ttorney representation is unknown" with respect to the charges, but that the standard procedure in South Carolina is to advise a "defendant of his rights pursuant to the Defense of Indigents Act."  PSR ¶ 36, at 11.  The available court documents – which consist of an indictment, and three sentencing forms[2] – do not indicate that Cunningham was represented by counsel or that he waived his rights.  See Tr. at 23:18-25:5 (Padilla, Rutland); Government's Exhibits 1-4 to December 17, 2007 Hearing.  Cunningham testified that he was not represented by counsel, see Tr. at 50:25-51:4 (Cunningham, Padilla), but that he could not remember whether the judge had asked him any questions about his rights, see id. at 51:5-9.

According to the PSR, Cunningham was sentenced to a concurrent sentence of six-years incarceration for the two charges, with two years suspended, for an actual sentence of four-years incarceration.  See PSR ¶ 36, at 10.  On June 29, 1990, he was released on probation, but violated the conditions of his release on January 22, 1991.  His probation was revoked on March 13, 1995, and he was sentenced to twelve-months custody.  He was released again on August 27, 1995.  See id.  Based on the sentencing forms from the South Carolina Court of General Sessions, see Government's Exhibits 1, 3 & 4, and on paragraph 35 of the PSR, it seems that four years of Cunningham's sentence may have been suspended, not two, but that he was incarcerated for four

---

[2] The proper designation of the three sentencing forms is unclear and they could be arguably classified as any of a variety of different types of court documents.  Two of the documents, one for each charge, is labeled "SENTENCE."  Government's Exhibits 3, 4 to December 17, 2007 Hearing. The other form the Court dubs a sentencing form appears to be a compilation of the two other forms, and states it "is a true copy of the sentence pronounced by the court in the case above entitled." Government's Exhibit 1 to December 17, 2007 Hearing.

years because the sentence for the burglaries ran consecutive to a two-year sentence he received as a result of the revocation of the probation on which he had been placed for an earlier charge of possessing stolen credit cards.

### 3.      Federal Offense for Felon in Possession of a Firearm.

The offense that brings Cunningham before the Court for sentencing occurred in Albuquerque, New Mexico on October 9, 2005, when Cunningham was found in possession of a .25 caliber handgun.  According to the PSR, Albuquerque police officers pulled Cunningham over because his license plate was illegally displayed.  See PSR ¶ 9, at 4.  After receiving Cunningham's driver's license and registration, an officer checked for outstanding warrants and discovered that Cunningham had a felony warrant from Georgia for a probation violation.  See id. ¶ 10, at 4.

The officer returned to Cunningham's vehicle along with a recently arrived officer.  As they approached, they saw a firearm sticking out of the console in the vehicle and ordered Cunningham out of the vehicle.  See id. ¶ 11, at 4.  The firearm was a loaded Ceska-Zbrojovka .25 caliber handgun.  See id.  A baggie of crack cocaine was found in Cunningham's jacket when he was searched, and another baggie was found in the baseball cap he had been wearing.  See id. Cunningham was informed of his Miranda rights, and admitted that the baggies of crack cocaine belonged to him and that he was a convicted felon.  See id. ¶ 12, at 5.

Cunningham was charged with possession of a controlled substance (cocaine).  See id. ¶ 11, at 4.  The Albuquerque Police Department contacted the Bureau of Alcohol, Tobacco and Firearms ("ATF") on October 12, 2005, and the ATF examined and test-fired the handgun, determining that it functioned as intended, that it had been manufactured in the Czech Republic, and that it had traveled through foreign and interstate commerce.  See id. ¶¶ 13-14, at 5.  The controlled substance charge was later dropped, and the crack cocaine destroyed at the request of the Bernalillo County

district attorney's office.  See id. ¶ 49, at 16-17.  On January 24, 2006, a federal charge was brought

against Cunningham for his firearm possession.  See Complaint, filed January 24, 2006 (Doc. 1).

## PROCEDURAL BACKGROUND

On July 27, 2007, Cunningham pleaded guilty to a one-count Indictment charging him with

being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2).  See Plea Agreement ¶ 3, at 2, filed July 27, 2007 (Doc. 36).  At the time that he entered

into his plea agreement, Cunningham did not admit to any prior convictions that could be considered

predicate offenses under the ACCA.  Nor did he admit that he possessed crack cocaine at the time

a firearm was found in his vehicle.  He admitted only previous convictions for forgery and

possession of cocaine in Georgia, and a conviction for receiving a stolen vehicle in New Mexico.

See id. ¶ 9(c), at 4.

The United States Probation Office ("USPO") concluded that the firearm found in

Cunningham's vehicle was possessed in connection with another felony.  The USPO also concluded

that Cunningham is an armed-career criminal, based upon the following three prior convictions: (i)

possession of a sawed-off shotgun in 1985 in South Carolina; (ii) burglary, a charge filed in 1986

in Charleston County, South Carolina; and (iii) attempted burglary, also occurring around the same

time as the burglary in 1986.

Cunningham objects to many of the PSR's conclusions.  While he raises a number of specific

objections, in sum, he objects to the PSR's conclusion that he is an armed-career criminal facing a

minimum sentence of fifteen years under 18 U.S.C. § 924(e) and that his conviction is subject to a

4-level enhancement under § 2K2.1(b)(6) of the Guidelines.  Based upon his objections,

Cunningham asserts that the proper offense level for sentencing purposes is level 14.  See Objections

¶ 11, at 7.  With 2 levels deducted for acceptance of responsibility, the adjusted offense level would

be 12, exposing Cunningham to a sentence under the advisory guidelines of 21 to 27 months.  See id. at 7-8.

Cunningham argues that, because his sawed-off shotgun conviction occurred when he was 17, and because he was sentenced under the YOA, this conviction cannot be used as an ACCA predicate offense.  See Objections ¶ 4, at 2.  He further contends that no documentation has been provided demonstrating that the shotgun he possessed would have been illegal under federal law. See id.

Cunningham also argues that his attempted burglary conviction was, at the time, only a misdemeanor under South Carolina law.  See id. ¶ 5, at 3.  Moreover, he maintains, South Carolina's attempted burglary law has a unique definition that makes it "an entirely different offense that does not include the element of entering without consent," and is thus not a crime that poses a serious potential risk of physical injury to others.  Id. at 4.  He also contends that the USPO erred in concluding that he received a six-year sentence for the attempted burglary.  What happened, he states, is that he initially received probation for the shotgun conviction, and later received a concurrent sentence for all three offenses at issue here after a probation violation.  See id. ¶ 6, at 5.

Cunningham further argues that his attempted burglary and burglary convictions should not be treated as separate felonies.  According to Cunningham, both offenses occurred at the same time and in the same hotel – after he was unable to get into one hotel room, he entered another instead – and thus should be considered as a single, continuing offense.  See id. ¶ 7, at 5.  He also asserts that the rule of lenity requires that the Court resolve any lingering doubts in his favor, and that he therefore cannot be sentenced as an armed-career criminal.  See id. ¶ 8, at 6.

Cunningham also argues that neither the burglary nor attempted-burglary conviction can be used as predicate offenses under the ACCA because the documentation regarding those convictions

does not establish that he was represented by counsel when he pleaded guilty to the charges.  <u>See</u> Objections ¶ 9, at 6.  According to Cunningham, the documentation also does not establish that he made a knowing waiver of his right to an attorney.  <u>See id.</u>  He maintains that, without proof that he was represented by counsel or knowingly waived his right to counsel, he cannot be sentenced as an armed-career criminal on the basis of those two convictions.

Finally, Cunningham argues that the USPO was wrong to apply a 4-level upward adjustment under § 2K2.1(b)(6) of the Guidelines.  He contends that the mere presence of the handgun in the vehicle he was driving is insufficient to establish a link between the weapon and any controlled substance.  <u>See</u> Objections ¶ 10, at 6-7.  Furthermore, he maintains that his state charge for drug possession has been dismissed, and that there is no evidence that the substance found was crack cocaine because the substance was destroyed and no laboratory reports have ever been produced indicating that the substance was crack cocaine.  <u>See id.</u> at 7.

The United States has not filed any objections to the PSR, but opposes each of Cunningham's objections.  In its response, the United States moves the Court to sentence Cunningham to 188 months imprisonment.  <u>See</u> United States' Response to Defendant's Objections to the Presentence Report, Filed on November 13, 2007, Doc. 41 at 6, filed December 6, 2007 (Doc. 44)("Response").

The United States argues that United States Court of Appeals for the Tenth Circuit precedent requires the Court to find that possessing a sawed-off shotgun is a violent felony and that the conviction being under South Carolina rather than federal law is immaterial.  <u>See id.</u> at 1-2.  The United States also maintains that whether Cunningham was sentenced as a juvenile for the crime is a question that need not be answered for the purposes of the ACCA, but that a recent United States Court of Appeals for the Fourth Circuit case suggests that the conviction would be an adult

conviction regardless.  See Response at 2.

The United States next responds to Cunningham's objections regarding his attempted burglary conviction.  The United States argues that his conviction would be a violent felony because of the risk it presents to others, and that although the offense was classified as a misdemeanor, under South Carolina common law the crime could have been punished by imprisonment for up to ten years.  See id. at 3-4.  As a result, the United States maintains, the conviction is a felony for the purposes of the ACCA.  See Response at 4.

The United States further argues that the burglary and attempted burglary were separate offenses, and that there is a presumption that the convictions were constitutionally sound.  See id. at 4.  The United States contends that, once a conviction is established, it is Cunningham's "burden to prove - by a preponderance of the evidence - that the conviction was obtained in violation of his right to counsel."  Id. at 4-5.  The United States stated that it believed Cunningham would be unable to carry his burden.  See id. at 5.  As a result, the United States maintains, all three convictions are proper predicate offenses and Cunningham is subject to the ACCA's mandatory minimum term of imprisonment.  See id.

Finally, the United States argues that the USPO correctly applied a 4-level enhancement under § 2K2.1(b)(6) of the Guidelines.  The United States maintains that having a firearm facilitates drug possession by allowing a defendant to protect himself or his drugs.  See Response at 5-6.  According to the United States, the firearm was retrieved from the center console of Cunningham's vehicle, next to where he was sitting, while at the same time he had crack cocaine on his person.  See id.

The USPO received a copy of Cunningham's objections to the PSR on November 14, 2007.  On December 12, 2007, the USPO issued an Addendum to the PSR.  The USPO considered

Cunningham's objections, but found that it had correctly calculated Cunningham's sentence.

On December 17, 2007, the Court held a sentencing hearing. At the hearing, the Court heard testimony from ATF Special Agent Erik Rutland regarding Cunningham's arrest in Albuquerque and the Albuquerque police's discovery of the firearm and crack cocaine, and also about the documentation on Cunningham's South Carolina convictions. The Court also heard testimony from Probation Officer Aaron Givens about his preparation of the PSR. The Court concluded the evidentiary phase of the hearing with testimony from Cunningham that he had not received counsel for the burglary and attempted burglary charges to which he pleaded guilty in South Carolina.

Rutland testified that when Albuquerque police officers stopped Cunningham, they found a firearm in the center console of the vehicle he was driving, and a clear-plastic baggie containing crack cocaine in Cunningham's jacket. See Tr. at 7:24-8:6 (Walsh, Rutland). The officers also found a clear-plastic baggie containing crack cocaine in a hat on the dashboard. See id. at 8:6-12. Cunningham was the only person in the vehicle. See id. at 8:13-14. The officers field tested the substances they believed to be crack cocaine and the test results were positive. See id. at 8:15-18. Rutland did not know how much crack cocaine was found. See id. at 8:19-25. Rutland also testified that narcotics users as well as traffickers carry firearms to protect themselves and their drugs. See id. at 9:16-10:10.

Rutland also testified regarding his investigation into Cunningham's criminal history. During the testimony, Alonzo Padilla, Cunningham's attorney, objected to any use of the arrest warrants or warrant affidavits to determine whether Cunningham's burglary convictions were violent felonies under the ACCA. See id. at 33:14-25, 34:1-20 (Padilla). The Court allowed the warrant information to be presented, and stated that it would determine later whether it could consider the evidence. See id. at 34:21-35:10 (Court).

Later in the hearing, David Walsh, attorney for the United States, noted that it appeared the South Carolina attempted burglary statute might be a felony, but that the parties had stipulated that it was a misdemeanor. See id. at 46:25-47:8 (Walsh, Court).

Cunningham took the stand and testified that he signed a plea agreement for the burglaries in South Carolina, but that he was not represented by counsel. See id. at 50:25-51:4 (Cunningham, Padilla). Cunningham testified:

> It was pretty much open and closed. I went into the courtroom they handed me some paperwork I signed the paperwork. You know I was . . . I was scared I didn't really know what was going on I sign the paperwork they put me in front of the judge. Open and closed.

Id. at 50:16-20. He could not remember whether the judge had questioned him regarding his rights. See id. at 51:5-9 (Padilla, Cunningham). During Mr. Walsh's cross-examination, Cunningham admitted that he had been convicted or charged of many crimes over the years and that he could not remember the names of all his former attorneys. See id. at 56:7-59:3 (Walsh, Cunningham). Cunningham insisted on re-direct, however, that he never had an attorney when he pleaded guilty to the burglary and attempted burglary charges. See id. at 60:22-61:6 (Padilla, Cunningham).

After Cunningham's testimony was complete, the Court heard argument from counsel. Mr. Padilla withdrew his objection regarding the length of the sawed-off shotgun. See id. at 65:18-24 (Court, Padilla)("Sir, I'll withdraw that [objection]."). Mr. Padilla also might have conceded that whether the shotgun conviction was an adult or a juvenile offense was not relevant under the ACCA, see id. at 67:3-15,[3] and also withdrew his objection to counting the attempted burglary as a felony

---

[3] The exchange between Mr. Padilla and the Court was:

THE COURT: The Government's argued in this case and when I look at 924[(e)(2)(B)] it looks to[] me like it doesn't make a difference if it's a firearm conviction, it doesn't seem that it makes a difference under the ACCA.

on the basis of the concurrent sentences, see id. at 76:21-23 (Padilla)("I think I would withdraw that. He [Cunningham] received a six year sentence it was run concurrent with the other sentences. . . . he clearly got the punishment that person charged with a felony would have gotten."). After hearing the remainder of counsels' argument, the Court continued the hearing to consider Cunningham's objections.

## LAW REGARDING U.S.S.G. § 2K2.1(b)(6)

Section 2K2.1(b)(6) of the Sentencing Guidelines provides a 4-level enhancement to a defendant's base offense level for a sentence under § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Application Note 14 to § 2K2.1 specifies that the use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, comment. (n.14(A)).

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of § 2K2.1(b)(6). See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467

---

MR. PADILLA: Yeah and I'd have to probably agree with the Government. I think it's one of those areas that I'm not going to win on appeal I think the case law is probably clear that if it went in that direction we appealed that issue we probably would not be successful.

THE COURT: So does it make any difference whether it was a juvenile or an adult conviction? Is that important here[?]

MR. PADILLA: At this point I don't think it makes that much difference. I think this case really comes down to the two burglary off[enses] and the issue of counsel or lack thereof.

Tr. at 67:3-15.

(10th Cir. 1993).  In United States v. Bunner, the Tenth Circuit explained how physical proximity could establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers trade.  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[4]  134 F.3d at 1006.

The United States Court of Appeals for the Eighth Circuit has noted that, when a person ventures out into public with a firearm and even a small amount of drugs, "there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."  United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997).  The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking – by protecting a defendant or his drugs.  See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002).  The Tenth Circuit reached a similar conclusion in an unpublished opinion.  See United States v. Fent, 199 Fed.Appx. 724, 727 (10th Cir. 2006)(unpublished opinion)(holding enhancement applied where the defendant possessed firearm in connection with possessing methamphetamine).

In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended.  See id. at 725-26.  The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search.  See id. at 726.  The

---

[4] Section 2K2.1(b)(5) was what is now § 2K2.1(b)(6) in the 2007 Sentencing Guidelines Manual.  There have been no modifications to the Guidelines between the date Cunningham committed the crime of felon in possession of a firearm and the present time that would warrant using an older Guidelines Manual.

defendant was found guilty after a jury trial of being a felon in possession of a firearm, but was never charged with any drug offense.  See id.  Nonetheless, the district court found by a preponderance of the evidence that the firearm was possessed in connection with felony possession of methamphetamine.  See id. at 727.  As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'"  Id. (quoting with approval the district court).  The Tenth Circuit affirmed.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply.  See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony possession of a small amount of drugs.").  Accordingly, courts have applied the 4-level enhancement in cases where small or no amounts of narcotics were recovered.  See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003); United States v. Green, 255 Fed.Appx. 473, 474 (11th Cir. 2007)(unpublished opinion)(upholding enhancement for having firearm and small amount of drugs for personal use); United States v. Moran-Paz, 35 Fed.Appx. 93, 93-94 (4th Cir. 2002)(unpublished opinion)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted.  See United States v. Gambino-Zavala, 39 F.3d 1221, 1230 n.3 (10th Cir. 2008).  In United States v. Magallanez, 408 F.3d 672, 684-685 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence.  See United

States v. Magallanez, 408 F.3d at 684-685.  See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("Booker therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

## LAW REGARDING THE ARMED CAREER CRIMINAL ACT

While the guidelines provide significant sentencing enhancements for career offenders, see U.S.S.G. § 4B1.1, the issue in this case is the ACCA.  Thus, the Court is interpreting an act of Congress.  And because the Court is dealing with a Congressional statute, which mandates a minimum sentence of fifteen years, the Court does not have the ability to depart or to vary, and thus the stakes for Cunningham in the Court's interpretation and application of the statute are great.[5]

### 1.    The ACCA.

The ACCA, which is codified at 18 U.S.C. § 924(e), imposes a mandatory minimum sentence for certain offenders with multiple criminal convictions.  The ACCA provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1).  The ACCA defines a violent felony as:

> (B) . . . any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
>    (i) has as an element the use, attempted use, or threatened use of physical

---

[5] Section 4B1.1 of the Guidelines is also based on Congressional legislation.  See 28 U.S.C. 994(h)("The [Sentencing] Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term" for certain specified offenders."); U.S.S.G. § 4B1.1, comment. (backg'd)(noting that § 4B1.1 implements 28 U.S.C. § 994(h)).  As the Sentencing Guidelines note, however, § 4B1.1 is the guidelines' implementation of a Congressional directive and not a mandatory minimum sentencing statute.  See U.S.S.G. § 4B1.1, comment. (backg'd).

force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  The ACCA also provides that "the term 'conviction' includes a finding that a person committed an act of juvenile delinquency involving a violent felony."  18 U.S.C. § 924(e)(2)(c).

### 2.    James v. United States.

The Supreme Court of the United States recently decided James v. United States, 550 U.S. 192, 127 S.Ct. 1586 (2007), in which it held that attempted burglary under Florida law is a violent felony for purposes of the ACCA.  The decision in James v. United States focused on the narrow question "whether attempted burglary, as defined by Florida law, falls within ACCA's residual provision for crimes that 'otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.'"  James v. United States, 127 S.Ct. at 1591 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

The Supreme Court ruled that a Florida attempted burglary offense could count as a predicate offense under the ACCA's residual provision.  Florida law defined burglary as "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."  James v. United States, 127 S.Ct. at 1591 (quoting Fla. Stat. § 810.02(1) (1993)).  Under Florida law, "[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt."  James v. United States, 127 S.Ct. at 1591 (quoting Fla. Stat. § 777.04(1)).

-16-

The Supreme Court first dealt with a threshold issue: whether the ACCA's language precluded the use of attempts, rather than completed crimes, as predicate offenses at all. The Supreme Court held that attempts could be predicate offenses under the ACCA. See James v. United States, 127 S.Ct. at 1593. The Supreme Court then turned to its analysis of the Florida statute, employing the categorical approach, which involves looking at "whether the elements of the offense . . . would justify its inclusion within the [ACCA's] residual provision, without inquiring into the specific conduct of" the offender. Id. at 1594.

Although the Florida attempt statute was broadly worded, its scope had been judicially narrowed in the context of burglary and did not include mere preparation, such as acquiring burglars' tools or casing a building. Rather, Florida courts construed attempted burglary to require an "overt act directed toward entering or remaining in a structure or conveyance." Id. (internal quotation marks omitted). Given this more restrictive definition, the Supreme Court found that attempted burglary posed a similar level of danger as burglary itself. See id.

The Supreme Court noted that the risk of injury created by burglary was not in the physical invasion of another's property, but in "the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate." Id. Attempted burglary presented a similar degree of danger as completed burglary because the possibility of violent confrontation on the doorstep of a building was essentially the same as that of a violent encounter within a building. See id. at 1595. The Supreme Court noted that the danger might even be greater in the average attempted burglary because most attempted burglaries failed to become successfully completed burglaries as the result of an outsider intervening and spoiling the commission of the crime. See id. Accordingly, the Supreme Court affirmed the United States Court of Appeals for the Eleventh Circuit's holding that attempted burglary under

Florida law was a violent felony under the ACCA.  See id. at 1600.

### 3.   **Sawed-Off Shotgun Convictions.**

A sawed-off shotgun is defined in South Carolina as "a shotgun having a barrel or barrels of less than eighteen inches in length or a weapon made from a shotgun which as modified has an overall length of less than twenty-six inches or a barrel or barrels of less than eighteen inches in length." S.C. CODE ANN. § 16-23-260(b) (2008).  Federal law – while not specifically labeling such shotguns as being "sawed-off" – restricts the possession of two types of shotguns: "(1) a shotgun having a barrel or barrels of less than 18 inches in length; [and] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches than length."  26 U.S.C. § 5845(a)(1) & (a)(2).  The South Carolina statutory range of punishment for possession of a sawed-off shotgun is incarceration up to ten years and imposition of a fine of up to $10,000.  See S.C. CODE ANN. § 16-23-260.

Several circuit courts of appeal have held that possession of a sawed-off shotgun amounts to a violent felony under the residual clause of the ACCA.  See, e.g., United States v. Childs, 403 F.3d 970, 971 (8th Cir. 2005); United States v. Fortes, 141 F.3d 1, 8 (1st Cir. 1998).  United States v. Fortes specifically held that possession of a sawed-off shotgun as described in 26 U.S.C. § 5845(a), in violation of § 5861(d), which is the operative statute actually prohibiting unregistered possession of firearms, was a violent felony.  United States v. Fortes, 141 F.3d at 6-8.

Other courts, including the Tenth Circuit, have found that possession of a sawed-off shotgun is a crime of violence under U.S.S.G. § 4B1.2(a).  See, e.g., United States v. Dwyer, 245 F.3d 1168, 1171-72 (10th Cir. 2001)(holding that violation of 26 U.S.C. § 5861(d) is a crime of violence and citing cases); United States v. Hayes, 7 F.3d 144, 145 (9th Cir. 1993)(holding similarly).  Application Note 1 to guideline 4B1.2 also provides: "[U]nlawfully possessing a firearm described

-18-

in 26 U.S.C. § 5845(a) (<u>e.g.</u>, a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'"  U.S.S.G. § 4B1.2, comment. (n.1).  The residual definition of a crime of violence in U.S.S.G. § 4B1.2 is virtually identical to the residual definition of violent felony in 18 U.S.C. § 924(e)(2)(B)(ii).  <u>Compare</u> U.S.S.G. § 4B1.2(a) ("any offense under federal or state law, punishable by imprisonment for a term exceeding one year . . . [that] involves conduct that presents a serious potential risk of physical injury to another"), <u>with</u> 18 U.S.C. § 924(e)(2)(B)(ii) ("any crime punishable by imprisonment for a term exceeding one year . . . [that] involves conduct that presents a serious potential risk of physical injury to another.").

### 4.    <u>Crimes Committed on Separate Occasions</u>.

In <u>United States v. Green</u>, 967 F.2d 459 (10th Cir. 1992), the Tenth Circuit found that it was proper to apply the ACCA even when the three predicate convictions were the result of a single judicial proceeding as long as they were committed on different occasions.  <u>United States v. Green</u>, 967 F.2d at 461.  In <u>United States v. Tisdale</u>, 921 F.2d 1095 (10th Cir. 1990), the Tenth Circuit held that the burglary of three different stores in the same mall on the same night constituted three separate offenses for purposes of the ACCA.  <u>See</u> <u>United States v. Tisdale</u>, 921 F.2d at 1098.  The Tenth Circuit found that breaking into each store represented a separate criminal incident because after burglarizing each store the defendant was "free to leave," but instead made the decision to break into another business, evidencing an intent "to engage in a separate criminal episode."  <u>Id.</u> at 1099.  The Tenth Circuit stated: "The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations."  <u>Id.</u>  Rather, in gaining access to each store, the burglar had to "physically break and enter three separate structures" within the mall.  <u>Id.</u>  Each individual break-in was therefore committed on "'occasions different from one another,'" and could be counted as predicate offenses for the ACCA.  <u>United States v.</u>

Tisdale at 1098 (quoting 18 U.S.C. 924(e)(1)).

## LAW REGARDING UNCOUNSELED CONVICTIONS AND SENTENCING ENHANCEMENTS

In a collateral attack on a final judgment of conviction, there is a presumption that the conviction was constitutionally valid.  See Parke v. Raley, 506 U.S. 20, 29 (1992).  As the Supreme Court stated, an alternate presumption requiring affirmative proof would "improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights."  Id.  Accordingly, in applying the ACCA in the Tenth Circuit, "once the government has established the fact of a prior conviction based on a guilty plea, the defendant has the entire burden of providing the invalidity of the conviction."  United States v. Wicks, 995 F.2d 964, 978 (10th Cir. 1993).  The Tenth Circuit also held that

> no presumption of an invalid guilty plea arises when the transcript or other records of the plea proceeding are incomplete or missing, or, at least in pre-Boykin[6] convictions, when the waiver of constitutional rights, or particular expressions of knowledge and voluntariness, do not show on the face of the record.

United States v. Wicks, 995 F.2d at 978 (footnote omitted).  In addition to pointing at a silent or missing record, a defendant must come forward with some other evidence.  See id.  Moreover, "[s]elf-serving conclusory statements" by the defendant are insufficient to meet this burden.  Id.

To the Court's knowledge, the Tenth Circuit has never directly addressed whether a silent or incomplete record dating from a post-Boykin conviction is entitled to a presumption of validity.  Tenth Circuit cases have, however, upheld the use of post-Boykin convictions where the record was incomplete or missing, albeit without ever addressing this point.  See, e.g., United States v. Bush,

---

[6] Boykin v. Alabama, 395 U.S. 238, 243-44 (1969), required courts to ensure the creation of an adequate record disclosing that a defendant voluntarily and knowingly pleaded guilty.

405 F.3d 909, 921 (10th Cir. 2005); United States v. Cruz-Alcala, 338 F.3d 1194, 1197 (10th Cir. 2003); United States v. Sanchez, 230 Fed.Appx. 803, 896 (10th Cir. 2007)(unpublished opinion). Other circuit courts have also followed this approach. See United States v. Jones, 332 F.3d 688, 698 (3d. Cir. 2003)(holding that record silent as to presence of counsel was entitled to presumption of regularity); United States v. Gray, 177 F.3d 86, 90-91 (1st Cir. 1999)(holding that record silent as to representation or waiver of right to counsel entitled to presumption).

## ANALYSIS

Cunningham asserts that none of the three offenses identified in the PSR as violent felonies will support the application of 18 U.S.C. § 924(e)'s mandatory minimum sentence. Although Cunningham raises a variety of different objections, the Court will overrule all but one of them. Cunningham's convictions in South Carolina for possession of a sawed-off shotgun and for burglary are both violent felonies as the ACCA defines the term. The attempted burglary and burglary were sufficiently separate acts to be considered to have been committed on different occasions, and Cunningham has failed to prove that his right to counsel was violated when he pleaded guilty to those two offenses. The United States has failed, however, to demonstrate that Cunningham's attempted burglary conviction was a conviction for a violent felony. That conviction cannot be used as a predicate offense under the ACCA. Because the ACCA requires three predicate offenses and the Court concludes that Cunningham has been convicted of only two predicate offenses, he is not an armed-career criminal, and is not subject to the ACCA mandatory minimum or to the Sentencing Guidelines enhancement that is meant to implement the ACCA. The evidence the United States offered at the hearing, however, demonstrates that the firearm Cunningham had in his vehicle was possessed in connection with another felony, namely the possession of crack cocaine. His base offense level was thus properly calculated in the PSR as including a 4-level enhancement.

Accordingly, Cunningham is not subject to a mandatory minimum, his offense level is 15, and his criminal history is category IV.[7]

I.     **THE SENTENCING ENHANCEMENT UNDER U.S.S.G. § 2K2.1(b)(6) APPLIES TO CUNNINGHAM'S SENTENCE.**

Cunningham objects to the 4-level adjustment that the USPO maintains is applicable under U.S.S.G. § 2K2.1(b)(6). See PSR ¶ 25, at 7.  Cunningham argues that the mere fact that the firearm was found in the vehicle that he was driving is not sufficiently connected to the offense of possession of a controlled substance.  He also argues that, without proof the substance was crack cocaine, there is no basis for tacking on an additional 4 levels under U.S.S.G. § 2K2.1.

The USPO's application of the 4-level increase is correct.  The evidence the United States presented at the sentencing hearing on December 17, 2007 was sufficient to establish by a preponderance of the evidence that Cunningham possessed a handgun in connection with a felony offense of possessing crack cocaine.  Although Cunningham was never convicted of possession of crack cocaine,  § 2K2.1(b)(6) can still apply because Cunningham's drug possession is relevant conduct.  See United States v. Gambino-Zavala, 39 F.3d at 1230 n.3.

Rutland's testimony establishes that Cunningham possessed a handgun in connection with another felony offense, the possession of crack cocaine.  Although Rutland's testimony was hearsay, the Court may rely on hearsay at sentencing so long as it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).  See United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990)(holding that reliable hearsay may be used in sentencing under the Guidelines). Rutland derived his testimony largely from his conversations with the arresting police officer.  The

-------

[7] Cunningham's base offense level is 14.  With the 4-level enhancement for a specific offense characteristic, his offense level is 18.  After a 3-level reduction for acceptance of responsibility his final offense level is 15.

Court finds his testimony to be sufficiently credible and reliable to establish the facts upon which the § 2K2.1(b)(6) enhancement rests.

Cunningham was traveling with two separate plastic baggies of crack cocaine. One was in his jacket, and another in his hat, which was found on the dashboard after his arrest. He had a .25 caliber handgun in the center console of his vehicle, close at hand and readily accessible. Field tests revealed that Cunningham was in possession of crack cocaine. This evidence is sufficient to show that Cunningham possessed a firearm in connection with the possession of crack cocaine. The later destruction of the substance Albuquerque police officers seized when they arrested Cunningham – presumably because the state drug charge was being dismissed – and the lack of a laboratory analysis are not fatal to the United States' position. The United States does not need a certain type of evidence; it merely needs evidence capable of demonstrating that it is more likely than not that the baggies Cunningham had contained crack cocaine and that his possession of a firearm was in connection with his possession of the crack cocaine.

Physical proximity may be sufficient to demonstrate a connection between a drug offense and possession of a firearm. See, e.g., United States v. Bunner, 134 F.3d at 1006. Here, the Court believes that it is a reasonable conclusion that Cunningham, driving around with two baggies of crack cocaine on him and a gun near at hand, possessed the firearm in connection with a felony drug offense. See United States v. Regans, 125 F.3d at 687 (noting the particular danger posed by an individual's venturing out into public with a gun and even a small amount of drugs). If Cunningham were arrested at home, with all his possessions around him, the proximity of the gun and drugs would be more coincidental. Cunningham was not arrested at home, however, and it is notable that two of the things Cunningham decided to bring with him while driving around were drugs and a gun. The Court sees no reason to disregard the natural inference that someone carrying drugs and a gun

together is armed to protect his drugs, particularly when that person is out in public.  While Cunningham may have had other reasons for his possession of a handgun, he has not offered any evidence to refute the conclusion that he was traveling with a firearm to facilitate his possession of two baggies of crack cocaine.

That it is uncertain how much crack cocaine Cunningham had on him does not change the result.  The Court would agree that someone carrying large quantities of drugs or otherwise engaged in drug trafficking or drug dealing is more likely to be carrying a weapon in connection with his drug activities.  This does not mean, however, that a person going armed with a smaller amount of drugs is carrying his weapon for a different reason.  The Tenth Circuit has upheld a district court's finding a nexus between drugs and a firearm in a situation similar to this one.  In United States v. Fent, a sheriff's deputy found a gun and a small amount of methamphetamine in a bag in the defendant's truck after a traffic stop.  See 199 Fed.Appx. at 726.  Those facts alone were a sufficient foundation for an enhancement under U.S.S.G. § 2K2.1(b)(6).  See United States v. Fent, 199 Fed.Appx. at 727.  Other federal appellate courts have reached similar conclusions.  See United States v. Condren, 18 F.3d at 1999; United States v. Green, 255 Fed.Appx. at 474; United States v. Moran-Paz, 35 Fed.Appx. at 93-94.

The Court finds the Eighth Circuit's conclusion that possession of a firearm facilitates drug possession just as it does drug trafficking to be persuasive.   See United States v. Bell, 310 F.3d at 605-06.  While dealers and traffickers might find themselves more in need of protection than users and buyers, all participants in the underground drug trade might rationally consider themselves to need the security of a firearm.  Moreover, while the quantity of crack cocaine with which Cunningham was discovered is unknown, a fair inference could be made that Cunningham was engaged in more than simple possession of drugs.  According to Cunningham, he has never used an

illegal drug other than marijuana, which he stopped smoking years ago, see PSR ¶ 63, at 20, and yet he had two baggies of crack cocaine on him. Ultimately, the Court determines that there is sufficient evidence demonstrating that Cunningham's possession of a handgun facilitated his felony possession of crack cocaine. There is no evidence contrary to this conclusion showing that Cunningham had a gun with him for some other purpose. Accordingly, Cunningham's base offense level as calculated in the PSR correctly includes a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6), and the Court will overrule the objection.

## II.   CUNNINGHAM IS NOT SUBJECT TO THE MANDATORY MINIMUM SENTENCE UNDER THE ACCA.

Cunningham raises a number of objections to the PSR's application of the ACCA to the facts of this case. The Court will sustain only Cunningham's objection to the inclusion of his attempted burglary conviction as a violent felony because the crime Cunningham pleaded guilty to, entering-without-breaking, is not a violent felony. This one fault in the United States' case, however, is sufficient to preclude the application of the ACCA.

### A.   THE SOUTH CAROLINA SAWED-OFF SHOTGUN CONVICTION IS A PROPER BASIS FOR A PREDICATE OFFENSE UNDER THE ACCA.

Cunningham initially objected to the PSR, in paragraph 30, using his sawed-off shotgun conviction as a predicate offense under the ACCA. He contended that there is uncertainty whether possession of a sawed-off shotgun in South Carolina is a crime of violence because there is no evidence about the length of the shotgun he had. He also contended that he was a juvenile at the time he committed the offense. At the hearing, Mr. Padilla withdrew the objection regarding the length of the barrel, see Tr. at 65:18-24 (Court, Padilla), and arguably conceded the juvenile conviction issue as well, see id. at 67:3-15. The Court will consider the issues in the event that Cunningham has not conceded them. The PSR's assessment that Cunningham's conviction for the

possession of a sawed-off shotgun is a crime of violence is appropriate, and the Court will overrule the objections.

### 1.    Barrel-Length Determines the Unlawfulness of a Shotgun Under South Carolina and Federal Law.

Under South Carolina law, "'Sawed-off shotgun' means a shotgun having a barrel or barrels of less than eighteen inches in length or a weapon made from a shotgun which as modified has an overall length of less than twenty-six inches or a barrel or barrels of less than eighteen inches in length." S.C. CODE ANN. § 23-31-310. This definition conforms to the federal standard for what constitutes a sawed-off shotgun. See 26 U.S.C. § 5845(a)(1) & (a)(2) ("(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches than length").[8] If Cunningham had been convicted under 26 U.S.C. § 5861(d) for possessing an unregistered sawed-off shotgun, that would have been a conviction for a crime of violence. See United States v. Dwyer, 245 F.3d at 1171-72. The Tenth Circuit stated in United States v. Dwyer that 26 U.S.C. §§ 5845 and 5861(d) are "targeted at specific weapons deemed to be particularly dangerous," and thus possession of such unregistered weapons was a crime of violence under the U.S.S.G. § 4B1.2(a)'s residual definition. United States v. Dwyer, 245 F.3d at 1172. U.S.S.G. § 4B1.2(a), defining a crime of violence, has a residual definition identical to that for a violent felony: "conduct that presents a serious potential risk of physical injury to another." The Court sees no reason not to apply the Tenth Circuit's holding in United States v. Dwyer to whether sawed-off shotgun possession amounts to a violent felony.

---

[8] 26 U.S.C. § 5845 operates in conjunction with § 5861(d). Section 5861(d) criminalizes the possession of an unregistered "firearm." Section 5845 defines what weapons are considered firearms for the purposes of the ban in § 5861(d).

Several circuit courts of appeal have specifically held that possession of a sawed-off shotgun amounts to a violent felony under the residual clause of the ACCA.  See, e.g., United States v. Childs, 403 F.3d at 971; United States v. Fortes, 141 F.3d at 8.

That Cunningham was prosecuted under a state law, rather than a federal statute, prohibiting the possession of a weapon that would fall within the boundaries of 26 U.S.C. § 5861(d) is immaterial for determining whether the possession would pose the degree of potential injury to others that would make it a violent felony.  As the United States Court of Appeals for the Ninth Circuit has said: "[S]awed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." United States v. Hayes, 7 F.3d at 145.

### 2.      Cunningham was not Convicted of Juvenile Delinquency.

Cunningham contends that the fact that his sawed-off shotgun conviction occurred when he was a juvenile raises serious questions whether it can be used as a predicate offense without a finding by the sentencing court in South Carolina that he committed "an act of juvenile delinquency involving a violent felony."  18 U.S.C. § 924(e)(2)(c).  Section 924(e)(2)(c) provides: "[T]he term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a violent felony."  This language – "includes" – suggests that the provision is inclusive, not exclusive.  The language does not require that crimes committed by minors must be acts of juvenile delinquency to qualify as violent felonies, but rather pulls in certain findings of juvenile delinquency that might otherwise fall outside the statute.  That Cunningham was 17 when he committed his crime does not mean that his conviction was not a violent felony.

The South Carolina YOA can apply to persons as old as 25.  See S.C. CODE ANN. § 24-19-10(d)(ii).  The YOA also applies to offenders under 17 who have been transferred out of the

juvenile-justice system.  See id. § 24-19-10(d)(i) (youthful offender is someone who is "under seventeen years of age and has been bound over for proper criminal proceedings to the court of general sessions pursuant to Section 20-7-7605 [providing for transfers of jurisdiction from the juvenile courts].").  South Carolina's juvenile justice laws are in Article 30, Chapter 7 (the Childrens' Code), Title 20 (Domestic Relations) of the South Carolina Code.  The YOA is part of Title 24 of the South Carolina Code, which deals with "Corrections, Jails, Probations, Paroles and Pardons."  This structure indicates that the YOA is a special sentencing option for certain offenders, but that any conviction sentenced pursuant to the YOA remains an adult conviction and can be considered a predicate offense under the ACCA.  United States v. Williams, 508 F.3d 724 (4th Cir. 2007), strongly supports this conclusion.  In United States v. Williams, the Fourth Circuit held that a conviction for distributing crack cocaine that was sentenced under the YOA could be a serious drug offense within the meaning of the ACCA.  See United States v. Williams, 508 F.3d at 727-28. The Court does not see any obstacle to treating Cunningham's sawed-off shotgun conviction as a violent felony under the ACCA and, to the extent he still asserts them, will overrule his objections.

> **B.  CUNNINGHAM'S BURGLARY CONVICTION IS A PREDICATE OFFENSE, BUT HIS ATTEMPTED BURGLARY CONVICTION IS NOT.**

A burglary and an attempted burglary are the other offenses that the USPO asserts are predicate offenses under the ACCA.  Cunningham objects to the attempted burglary conviction being classified as a violent felony, and to the use of either conviction as a predicate offense because he contends that he was not represented by counsel when pleading guilty to the offenses.  He also objects to the offenses being treated as two separate offenses, arguing that they should be considered part of a single continuing offense.  The Court will sustain his objection to the attempted burglary conviction being defined as a violent felony, but will overrule the remaining objections.

**1.     The Six-Year Sentence for Multiple Crimes Does Not Mean that the Attempted Burglary was Not Punished as a Felony.**

Cunningham originally objected to the PSR's determination that he had received a six-year sentence for the attempted burglary conviction. Mr. Padilla withdrew the objection at the hearing. See Tr. at 76:21-23 (Padilla). Even if Cunningham persisted with the objection, the Court would overrule it. While entering-without-breaking was treated as a misdemeanor at the time, the maximum possible sentence under South Carolina law was ten years. See State v. Storgee, 277 S.C. 412, 412, 288 S.E.2d 397, 397 (1982)("When no special punishment is provided for a misdemeanor, the sentence shall not exceed ten (10) years."). All that 18 U.S.C. § 924(e)(2)(B) requires is that the crime be "punishable by imprisonment for a term exceeding one year." That a sentence runs concurrently with other sentences is immaterial. The attempted burglary conviction therefore meets this requirement of the definition for violent felony.

**2.     Cunningham's Burglary and Attempted Burglary Convictions Are Separate Felonies Under the ACCA.**

Cunningham objects to his burglary and attempted burglary convictions being treated as separate offenses under the ACCA. Because Cunningham's burglary and attempted burglary offenses were separate criminal episodes, the Court will overrule the objection. The crimes involved separate rooms of the same motel. The situation is similar to United States v. Tisdale. In United States v. Tisdale, a burglar entered a shopping mall and broke into three different stores in a row on the same night. The Tenth Circuit held that breaking into each store represented a separate criminal incident because after burglarizing each store he was "free to leave," but instead made the decision to break into another business, evidencing an intent "to engage in a separate criminal episode." 921 F.2d at 1099. The burglar's behavior was distinguishable from a situation in which a person committed armed robbery on several different individuals gathered together in the same time and

place.  See id.  The Tenth Circuit stated: "The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different locations."  Id. Rather, in gaining access to each store, the burglar had to "physically break and enter three separate structures" within the mall.  Id.  Each individual break-in was therefore committed on "'occasions different from one another,'" and could be counted as predicate offenses for the ACCA.  United States v. Tisdale at 1098 (quoting 18 U.S.C. 924(e)(1)).

Cunningham's conduct at the motel is analogous to the burglar's actions in the mall.  Within one motel, Cunningham committed attempted burglary or entering-without-breaking of one room, and then burglary of another.  It is unclear how far apart the incidents were, but even if they were committed on separate days only because one was committed shortly before midnight and the other shortly after, they would still be separate incidents.  United States v. Tisdale also involved incidents occurring all on the same night.  What is important is that the crimes were directed at different rooms.  Individual rooms in a motel are distinct areas in a practical sense.  They are rented separately, usually occupied by different persons, and each capable of being locked.  They are essentially independent sections within the larger motel, much like individual stores are within a mall.  Just as targeting different stores in a mall would generally involve different victims, the burglary of different rooms in a motel would likely involve a series of individual victims. Cunningham's convictions arising from his actions at the Boardwalk Motel are distinct offenses under United States v. Tisdale, and each is capable of being considered in determining if the ACCA's mandatory minimum sentence is triggered.

### 3.   Cunningham has not Overcome the Presumption that He was Represented by Counsel During the Burglary Proceedings.

Cunningham objects to the use of his burglary and attempted burglary convictions because

there is no documentation of attorney representation or a waiver of his right to counsel when he pleaded guilty to those two crimes.  Convictions obtained in violation of a defendant's right to counsel – sometimes known as uncounseled convictions – cannot be used as predicate offenses under the ACCA.  Cunningham has not, however, met his burden of demonstrating that his Sixth Amendment rights were denied.  The convictions are therefore properly available for consideration as predicate offenses under the ACCA, and the Court will overrule the objection.

Once the United States establishes the fact of a conviction, the burden shifts to the defendant to prove by a preponderance of the evidence that his conviction was constitutionally invalid.  See United States v. Wicks, 995 F.2d at 978.  Cunningham does not dispute that his convictions for burglary and entering-without-breaking are proven, and thus the burden lies on Cunningham to demonstrate he was denied his right to counsel when pleading guilty to those convictions. Cunningham is unable to carry that burden.

A defendant's previous convictions are presumed to be constitutionally sound.  See Parke v. Raley, 506 U.S. at 29.  To overcome that presumption, a defendant cannot simply point to absences in the record, but must affirmatively demonstrate that he was denied the right to counsel. See United States v. Wicks, 995 F.2d at 978.  Nor can a defendant rely upon his own self-serving and conclusory testimony.  See id.  The only evidence that Cunningham has presented to rebut the presumption of constitutional validity is the silence of the record and his own testimony.  This evidence is insufficient.

Cunningham is correct that the sparse records of his South Carolina convictions say nothing about him having been represented by counsel or waiving his right to counsel.  That silence standing alone is unavailing, but the Court also notes that the documents do not appear to have a line for an attorney's signature, and also that the documents do not include a plea agreement or plea colloquy

transcript.  The situation is not one of an essentially complete record that is nonetheless silent regarding representation, but rather one of an incomplete record.  A plea agreement containing only the signatures of the prosecutor and the defendant, or a transcript making no mention of a waiver of rights, would be significantly more compelling evidence than the fact that an indictment and three court forms lack an indication of counsel.  Given the age of the conviction – over two decades at this point – the meagerness of the record is unsurprising.  While Mr. Padilla argues that the Court should not require Cunningham to do more than he has, see Tr. at 83:23-25, 84:5-12, such an argument, whatever its merits as a matter of fairness or policy, is foreclosed by precedent.  The burden of showing that his convictions were constitutionally infirm rests with Cunningham.  He never appealed his convictions.  Only now does he seek to challenge them.  He cannot point to an absence of documentation to overcome the "deeply rooted . . . 'presumption of regularity' that attaches to final judgments." Parke v. Raley, 506 U.S. at 29.

Cunningham's testimony is similarly insufficient.  United States v. Wicks requires the defendant to present more evidence than his own self-serving testimony and an ambiguous or silent record.  See 995 F.2d at 978.  In addition to the requirements case law imposes, however, Cunningham is also unable to remember whether he waived his right to counsel.  See Tr. at 51:5-9 (Padilla, Cunningham).  While he recalls not having an attorney, he cannot affirmatively say that he did not waive his right to one.  See id. at 51:2-4.

The Court does not believe that the fact Cunningham's convictions were after the Supreme Court decided Boykin v. Alabama changes this result.  While the Tenth Circuit left open the possibility of post-Boykin convictions having a different standard, the Tenth Circuit also suggested that the presumption would apply regardless.  See United States v. Wicks, 995 F.2d at 978 n.16 ("The issue of post-Boykin convictions is not before us. See, however, the post-Boykin case of

United States v. Johnson, 973 F.2d [857] at 861 [(10th Cir. 1992)], in which the defendant had the full burden of proving the constitutional invalidity of his conviction."). The Tenth Circuit also appears to have potentially abandoned this possible distinction. See, e.g., United States v. Bush, 405 F.3d at 921 (applying presumption to post-Boykin conviction without discussion); United States v. Cruz-Alcala, 338 F.3d at 1197 (same). The Court does not believe that the fact a conviction occurred post-Boykin would change the analysis. The presumption of regularity would still apply.

Finally, the general presumption of validity that accompanies a conviction is bolstered given the circumstances of the present case. Gideon v. Wainwright, 372 U.S. 335 (1963), was decided years before Cunningham's convictions, giving time for its requirement of counsel for indigents to take hold in the understanding of judges and prosecutors. South Carolina has a statute specifically guaranteeing the right to counsel to indigents, which includes a provision requiring courts to advise eligible defendants of their rights to counsel. See S.C. CODE ANN. § 17-3-10. The PSR reports that it is the standard procedure of South Carolina courts to advise defendants of their right to counsel. See PSR ¶ 35, at 10.

Cunningham is unable to produce evidence sufficient to meet his burden of demonstrating this his convictions were obtained in violation of his right to counsel. Accordingly, they may be considered for sentencing purposes, including use as predicate offenses under the ACCA. The Court will overrule the objection.

### 4.    Cunningham's Attempted Burglary Conviction is not a Conviction for a Violent Felony.

Cunningham objects to paragraph 30 of the PSR with its reference to "attempted burglary," which concludes, among other things, that the 1986 conviction for attempted burglary is a predicate felony offense under the ACCA. The USPO used this conviction as part of its determination that

Cunningham was an armed-career criminal.  Cunningham contends that the use of the term "attempted burglary" is misleading, because the actual statute under which he pled guilty is entitled "Entering house or vessel without breaking or entering with intent to steal; attempt to enter."[9]  The Court will sustain Cunningham's objection because this "attempted burglary" conviction is not a violent felony.

For Cunningham's conviction for what the PSR labels "attempted burglary" to be a violent felony, it must fall within the residual provision of the ACCA's definition of violent felonies.  The ACCA defines three classes of crimes that constitute violent felonies: (i) crimes that have as an element "the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i); (ii)  burglary, arson, extortion, or crimes involving the use of explosives, see id. § 924(e)(2)(B)(ii); or (iii) crimes not within the first two categories that involve "conduct that presents a serious risk of physical injury to another," id.  The South Carolina entering-without-breaking statute under which Cunningham was convicted does not have any element involving the use of force against a person, and is not burglary, arson, extortion, or use of

_____

[9] It is not clear to what statute Cunningham pleaded guilty.  The PSR refers to § 16-13-170 of the South Carolina Code.  See PSR ¶ 30, at 8.  Cunningham refers to that statute by its title, but not its citation.  See Objections ¶ 5, at 3-4.  The United States also refers specifically to § 16-13-170 as "the statute of conviction," Response at 3, and attaches a copy of § 16-13-170 to its response, see Exhibit 2 to Response (Doc. 44-2).  Neither party objected to the PSR's determination that § 16-13-170 was the statute of conviction.  The parties based their arguments on that statute at the hearing.  See Tr. at 71:5-75:23 (Court, Padilla, Walsh).  Accordingly, although the indictment and sentencing form state "attempted burglary" on them, and there are separate statutes in South Carolina that could be considered attempted burglary statutes, the Court will assume that the statute at issue is § 16-13-170 of the South Carolina Code.  That is what the parties have briefed and argued, and so that is what the Court will consider.  Moreover, to the extent that there is ambiguity about the statute of conviction, the burden of demonstrating that the ACCA applies rests with the United States.  Despite the ambiguity the court documentation creates, the United States has not attempted to prove that some statute other than § 16-13-170 of the South Carolina Code is what the Court should be interpreting.

explosives. Accordingly, for the crime to be a violent felony, it must fit within the parameters of the third classification, the residual clause. The Court concludes that entering without breaking in South Carolina does not come within that provision.

The South Carolina statute under which Cunningham was convicted is similar to, but ultimately materially different from, the Florida statute that the Supreme Court held constituted a violent felony in James v. United States. The Court applies the categorical approach in making its determination and does not consider Cunningham's actual conduct in ascertaining whether a violation of the South Carolina statute requires "conduct that presents a serious risk of physical injury to another." James v. United States, 127 S.Ct. at 1594.

The South Carolina entering-without-breaking law states, in relevant part: "It is unlawful for a person to . . . enter, without breaking, or attempt to enter a house or vessel, with intent to steal or commit any other crime." S.C. CODE ANN. § 16-13-170 (2008).[10] The Florida statute considered in James v. United States proscribes "'entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.'" 127 S.Ct. at 1591 (quoting Fla. Stat. § 810.02(1) (1993)). Both statutes have similar, although not identical, elements of entering a building (or vessel/conveyance) and of doing so with an intent to commit a crime. While in Florida the attempt element was from a separate criminal-attempt statute, in South Carolina the attempt element is in the statute. Although South Carolina courts do not appear to have specifically addressed the scope of attempt in the context of the entering-without-breaking statute, they have considered it

---

[10] Although the Court cites the current version of the South Carolina Code, which is more widely available, the relevant statutory language has not changed. South Carolina has amended the statute to specify that entering without breaking is a class E felony, but that amendment is not at issue here.

more generally.  Like Florida, South Carolina has circumscribed the reach of attempt.  A criminal attempt in South Carolina requires more than preparation to commit a crime; it requires specific intent and, most importantly for this case, an overt act.  As the South Carolina Court of Appeals stated: "[T]he State must prove that the defendant's specific intent was accompanied by some overt act, beyond mere preparation, in furtherance of the intent, and there must be an actual or present ability to complete the crime."  State v. Nesbitt, 346 S.C. 226, 231, 550 S.E.2d 864, 865 (Ct.App. 2001)(citing State v. Evans, 216 S.C. 328, 57 S.E.2d 756 (1950); State v. Quick, 199 S.C. 256, 19 S.E.2d 101 (1942)).  Requiring an overt act for an attempt is a longstanding judicial doctrine in South Carolina, dating at least back to a pair of moonshine cases in the middle of the twentieth century. See State v. Quick, 199 S.C. 256, 19 S.E.2d at 103 (holding that having a still on property equipped and ready to make whiskey was "merely preparatory to the commission of the crime [of illegal manufacture of intoxicating liquors], and not an act proximately leading to its consummation"); State v. Evans, 216 S.C. 328, 57 S.E.2d at 758 (holding that sitting near an operable still constituted "no overt act in connection with the manufacture of whiskey").[11]  When Cunningham was convicted, attempt would thus have been understood to require an overt act. Similar to the Florida statute in James v. United States, the South Carolina statute would therefore not sweep "in merely preparatory activity that poses no real danger of harm to others."  127 S.Ct. at 1594.

    Although the Florida and South Carolina statutes are thus very similar, they also diverge.

---

[11] The overt act requirement in South Carolina arguably dates back as far as 1920, to the case of State v. Kelly, 114 S.C. 336, 103 S.E. 511 (1920), or even earlier.  State v. Kelly's holding that "[t]he evil thought, which is the criminal intent, only becomes unlawful when he who harbors it proceeds to put it into action," 103 S.E. at 512, is, however, too vague to firmly establish that a person could not be convicted of an attempt for mere preparation.

This divergence is significant enough to take the South Carolina law outside of the ACCA's definition of a violent felony.  The conduct the South Carolina statute proscribes does not entail a risk of physical harm to others comparable to attempted burglary.  As noted in <u>James v. United States</u>, attempting to commit burglary presents a danger of violent confrontation similar to successfully entering a building to commit burglary, or perhaps an even greater danger because many attempted burglaries are not completed because they are interrupted by someone else.  <u>See</u> 127 S.Ct. at 1595. The mere act of attempting to enter a building to commit a crime within it, however, without more, seems to the Court to represent a significantly reduced risk of provoking a violent altercation.

Cunningham's argument that the South Carolina statute is misleadingly labeled by the PSR as attempted burglary and is actually materially different from a generic attempted burglary statute is persuasive.  Cunningham argues that "the element that is most determinative of the risk of physical injury to another – entering **without consent** – is not an  element of entering without breaking or attempting to enter."  Objections ¶ 5, at 4 (emphasis in original).  The Supreme Court of South Carolina has held, as Cunningham notes, that the crime of which Cunningham was convicted is not a lesser-included offense of burglary, because it involves entering without breaking, whereas burglary involves entering without consent.  <u>See</u> <u>Hope v. State</u>, 328 S.C. 78, 81-82, 492 S.E.2d 76, 78-79 (1997).  Cunningham is also correct that the offense to which he pleaded guilty is not, technically, attempted burglary.  South Carolina has three degrees of statutory burglary.  <u>See</u> S.C. CODE ANN. § 16-11-311 - 313 (2008).  Those statutes do not provide for an attempt crime, but South Carolina courts have recognized a common-law crime of attempted burglary whose elements consist of an attempt to violate one of the three degrees of statutory burglary.  <u>See</u> <u>State v. Wright</u>, 354 S.C. 48, 53-54, 579 S.E.2d 538, 541 (Ct.App. 2003), <u>overruled on other grounds by</u> <u>State v.</u>

Gentry, 363 S.C. 93, 610 S.E.2d 494 (2005).  The core definition common to all three degrees of burglary is entering without consent.  See S.C. CODE ANN. § 16-11-311 ("A person is guilty of burglary in the first degree if the person enters a dwelling without consent . . ."); id. § 16-11-312 ("A person is guilty of burglary in the second degree if the person enters a dwelling without consent . . ."); id. § 16-11-313 ("A person is guilty of burglary in the third degree if the person enters a building without consent . . .").  Cunningham pleaded guilty not to attempting to violate one of the three burglary statutes, but to the separate crime of entering without breaking under § 16-13-170.  Cunningham has therefore not been convicted of attempted burglary.

The organization of the South Carolina Code also suggests that the offense Cunningham was convicted of should be considered as distinct from attempted burglary.  All the burglary statutes are arranged under Chapter 11 of  Title 16 of the South Carolina Code, "Offenses Against Property," in Article 5, "Burglary, Housebreaking, Robbery and the Like."  Id. §§ 16-11-311 to 313.  The entry-without-breaking crime Cunningham committed is found within Chapter 13 of Title 16, "Forgery, Larceny, Embezzlement, False Pretenses and Cheats."  Id. § 16-13-170.  This arrangement supports Cunningham's position.

The question though is not whether South Carolina formally labels what Cunningham did to be attempted burglary, but whether the distinction between attempted burglary and entering without breaking would result in a reduced level of risk of violence.  The Court agrees with Cunningham and concludes that the distinction, while subtle, is dispositive.  Other than Hope v. State, the only South Carolina opinion dealing with the entering-without-breaking statute is Dunbar v. State, which held that entering without breaking was a lesser-included offense of housebreaking.

See 282 S.C. 169, 171, 318 S.E.2d 16, 17 (1984).[12]  The Court is thus largely left with only the

sparse words of the statute to guide its interpretation.  The South Carolina statute can be divided into

three relevant elements: (i) attempted entry into a house; (ii) without breaking; and (iii) with intent

to steal or commit any other crime.  Missing from these elements is the lack-of-consent element

found in all three degrees of burglary in South Carolina and also in the Florida statute in James v.

United States, which contains the provision that entry with intent to commit a crime within is

unlawful "'unless the premises are at the time open to the public or the defendant is licensed or

invited to enter or remain.'"  127 S.Ct. at 1591 (quoting Fla. Stat. § 810.02(1) (1993)).  The lack of

a requirement that the entry be without consent means, of course, that someone can be convicted

under the statute for entering a home with the owner's consent.

      The difference in the statutory language is also evident when it is compared with third-degree

burglary, apparently the closest analog in South Carolina.  The third-degree burglary statute

proscribes entering "a building without consent and with intent to commit a crime therein."  Id. §

16-11-313.  There is no case law from South Carolina indicating that there is an implicit requirement

that a perpetrator be entering without consent to violate the entering-without-breaking statute.

Indeed, the case law cuts the other way.  In holding that entering without breaking was not a lesser-

included offense of burglary, the Supreme Court of South Carolina specifically distinguished the

two crimes on the grounds that, for conviction under the burglary statute, "it must be shown the

entering was accomplished without consent, whereas" for conviction under the entering-without-

---

[12] Housebreaking was defined as "as the breaking and entering of a dwelling house of
another, in the daytime, with intent to commit a crime therein."  Dunbar v. State, 282 S.C. at 171,
318 S.E.2d at 17 (citing then-extant S.C. CODE ANN. § 16-11-320(1)).  Housebreaking was a
statutory offense that the South Carolina legislature repealed in 1985. See United States v. Robinson,
225 F.3d 656 at *2 (4th Cir. 2000)(Table)(unpublished opinion).

breaking statute, "it must be shown the entering was accomplished without breaking." Hope v. State, 328 S.C. at 81-82, 492 S.E.2d at 78-79. South Carolina's proscribing such conduct is not anomalous. The United States Court of Appeals for the Sixth Circuit, considering a similar Michigan law, noted that "[n]owhere, either in the statute or in the model jury instruction, is there any indication that entering without breaking requires an 'unprivileged' entry and no Michigan case has inferred such a requirement." United States v. Throneburg, 921 F.2d 654, 659 (6th Cir. 1990).

Although the scenario of the perpetrator entering a home with the resident's consent, but also with the requisite intent, seems unlikely, the categorical approach dictates that the Court consider such possibilities. And it is difficult to envision such a scenario involving the same risk that is inherent to an attempted burglary. The lack of consent involved in burglary is a key feature in elevating the danger posed by the crime. One confrontation that is likely to occur in attempted burglary is a property owner or resident encountering the would-be burglar attempting to enter, but when that person has consent to enter such an encounter would not happen or generally would not result in injury. The other scenario likely to lead to violence – a passerby or law-enforcement officer intervening – is largely precluded by the statute's requirement that the entry be without breaking. Without the display of at least some force that accompanies breaking,[13] most strangers would be unaware that some crime is in progress if they were to observe an attempted entry without breaking, or at least that some serious crime was occurring. It is unclear what the paradigm of attempted entry without breaking would be, but it is likely someone walking up to a door, finding the door locked,

---

[13] South Carolina defined breaking as "any act of physical force, however slight, whereby any obstruction to entering is forcibly removed." State v. Clamp, 225 S.C. 89, 80 S.E.2d 918, 922 (1954). Breaking was a requirement under common-law burglary, but not the new statutory definitions of burglary, and also of the now-repealed crime of housebreaking. See PATRICIA SEETS WATSON, S.C. JURISPRUDENCE, BURGLARY § 14 (2008).

and leaving, or else attempting to enter a building with the owner's consent with the purpose of committing some sort of fraud or surreptitious theft while inside, but deciding not to follow through. The Court does not see this as having the same sort of inherent risk as someone attempting to force his way into a house.

The Court's conclusion that South Carolina's entering without breaking offense is not a violent felony is reinforced by South Carolina's placement of the law within a chapter of its Code titled "Forgery, Larceny, Embezzlement, False Pretenses and Cheats," and by the decision of the South Carolina legislature to create a third-degree burglary offense that is substantially similar to the entering-without-breaking statute except for its requirement of entering without consent and its application to entries into all buildings, and not only into houses. See S.C. CODE ANN. § 16-11-313. The Court is not aware of any cases, either under the ACCA or the similar career-offender definition of crime of violence, dealing with the threat posed by entry without breaking.[14]

---

[14] The Court's research has located only one case considering whether an entering-without-breaking crime falls within the ACCA's residual definition of a violent felony. That case, United States v. Patterson, 882 F.2d 595 (1st Cir. 1989), abrogated in part by Taylor v. United States, 495 U.S. 575 (1990), was decided before James v. United States, and held two Massachusetts statutes to be violent felonies. One of the statutes the United States Court of Appeals for the First Circuit considered, read: "'Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished . . .'" United States v. Patterson, 882 F.2d at 601 (quoting Mass.Gen.Laws Ann. ch. 266, § 18). The First Circuit did not indicate whether the defendant was charged under the breaking-without-entering-at-night provision or the breaking-and-entering-during-the-day provision. The First Circuit, however, stated "that any felonious breaking and entering presents 'a serious potential risk of physical injury to another.'" United States v. Patterson, 882 F.2d at 604. The First Circuit consistently referred to the statutes it considered as involving "breaking and entering." Id. at 596, 601 & 605. The only mention of entering without breaking was when the First Circuit quoted the whole statute. The only other case dealing with the ACCA's violent-felony definition and a statute similar to the one in South Carolina is United States v. Throneburg, which held that entering without breaking under Michigan law was not a burglary under the ACCA, but did not address whether the statute might be within the residual definition. See 921 F.2d at 659.

Several courts, including the Fourth Circuit – which embraces both North and South Carolina – have, however, interpreted a North Carolina statute that proscribes breaking or entering.  The North Carolina statute reads: "Any person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon."  United States v. Bowden, 975 F.2d 1080, 1084 (4th Cir. 1992)(quoting N.C.G.S. § 14-54(a)).  The Fourth Circuit held that the statute described a crime of burglary under Taylor v. United States' generic definition of burglary for the ACCA.  See United States v. Bowden, 975 F.2d at 1085.  The Fourth Circuit explained:

> As construed in Taylor, if Bowden had broken into the buildings there is no doubt that Taylor was complied with. But we must assume that Bowden gained entry into the buildings without breaking, however gently, with intent to commit a felony or larceny therein. In such a case we think that his entry was just as unlawful or unprivileged as if he had broken into the building with the same intent. Certainly the entry of a man who enters without breaking with intent to commit a felony or larceny is neither lawful nor privileged, so it must be within Taylor.

United States v. Bowden, 975 F.2d at 1084-85.  Because of the similarity between the North Carolina statute's language and the South Carolina statute's language, Cunningham's attempted entering-without-breaking conviction could be viewed as an attempted burglary conviction for the purposes of the ACCA.  This analysis would support bringing the entering-without-entering statute within the ambit of the residual definition of violent felony pursuant to James v. United States.

The Fourth Circuit's reasoning, however, is not persuasive in this regard.  First, the Fourth Circuit's conclusion that "the entry of a man who enters without breaking with intent to commit a felony or larceny is neither lawful nor privileged" is not necessarily true.  This analysis ignores the possibility of a person's consensual entry into a building with an ulterior motive to commit a crime once allowed inside.  Second, the Fourth Circuit's reasoning seems to conflate an inference with the element of a crime.  In most cases where someone enters a building with felonious intentions, it can probably be inferred that the building's owner or resident would object to the entry.  This factual

inference, however, that seems to go beyond the four corners of the statutory elements.  Third, and most importantly, the Fourth Circuit's logic discovers an implicit element of the offense hidden in the statute without requiring that element be proven.  This additional element is particularly problematic in the context of the categorical approach under the ACCA.  The Supreme Court has directed courts to look at the elements of the offense in determining whether a crime is a violent felony.  Under the Fourth Circuit's approach, a defendant may be convicted of having committed a crime involving certain elements, only to discover later that his conviction necessarily entailed additional elements upon which the statute was silent.  This approach is not a problem if the implicit conduct is understood as an element of the statute.  Courts frequently read additional elements into criminal statutes, albeit usually various intent requirements.  Such implicit elements then become something a prosecutor must prove to a jury, or else something that a defendant will be aware he is admitting by pleading guilty to a charge.  The Fourth Circuit's approach, though, allows for a conviction without having the implicit element proven, while at the same time allowing that element to later be used against the defendant at a subsequent federal sentencing.[15]

        The Sixth Circuit, considering the same North Carolina statute, came to a conclusion similar to the one that the Court does: that the Fourth Circuit's reasoning essentially created a new element

---

        [15] The First Circuit also apparently held that the North Carolina breaking-or-entering statute was a violent felony because it was a crime of burglary under Taylor v. United States.  See United States v. Anderson, 921 F.2d 335, 340 (1st Cir. 1990).  The Fourth Circuit cited United States v. Anderson as support for its holding.  See United States v. Bowden, 975 F.2d at 1085.  While the Court is reluctant to reach a different conclusion than two courts of appeals did – although not a completely different conclusion, as the First and Fourth Circuit were analyzing a separate statute, pre-James v. United States, were considering completed crimes rather than attempts, and were considering the ACCA's definition of burglary rather than its residual definition – the First Circuit's holding characterized the North Carolina statute as "breaking and entering" and its reasoning was limited to concluding that a breaking-and-entering conviction "clearly qualifies as a predicate offense under the Taylor definition."  United States v. Anderson, 921 F.2d at 340 (emphasis added).

in the statute.  The Sixth Circuit held that <u>Taylor v. United States</u>' generic burglary definition had

two separate elements: (i) unprivileged entry; and (ii) intent to commit a crime within.  <u>See</u> <u>United</u>

<u>States v. Maness</u>, 23 F.3d 1006, 1008-09 (6th Cir. 1994).  The Sixth Circuit determined that the

Fourth Circuit's analysis erroneously melded the two elements into a single intent requirement.  <u>See</u>

<u>id.</u> at 1009.  The Sixth Circuit also noted that the Fourth Circuit had not considered a Supreme Court

of North Carolina case that rejected the Fourth Circuit's interpretation of the North Carolina statute.

<u>See</u> <u>id.</u>  That North Carolina case specifically stated that entry without felonious intent did not

automatically entail a lack of consent, but rather "'an entry, even with felonious intent, cannot be

punished when it is with the owner's consent.'"  <u>Id.</u> (quoting <u>State v. Boone</u>, 297 N.C. 652, 657, 256

S.E.2d 683, 686 (1979)).  The Sixth Circuit went on, however, to hold that the North Carolina statute

was a burglary crime because the Supreme Court of North Carolina had effectively read a lack-of-

consent requirement into the statute.  <u>See</u> <u>United States v. Maness</u>, 23 F.3d at 1009.

       Considering the problems with the Fourth Circuit's approach and given the Supreme Court

of South Carolina's expressly distinguishing entering without breaking from burglary on the basis

of the former not having a lack-of-consent requirement, it would be odd to apply the Fourth Circuit's

reasoning to the South Carolina statute.  The South Carolina statute should not be interpreted to

imply that every violation of the statute indicates entry without consent.

       This interpretation is somewhat at odds with the concerns animating the Supreme Court of

North Carolina's construction of its breaking-or-entering statute.  The Supreme Court of North

Carolina did not hold that felonious intent entailed lack of consent, however, but rather held that a

statute punishing a consensual entry into a building with an intent to commit a crime inside was too

broad a statute.  <u>See</u> <u>State v. Boone</u>, 297 N.C. at 658, 256 S.E.2d at 687.  The Supreme Court of

North Carolina stated that it did not think the legislature had intended to pass a statute that would

criminalize acts such as walking into one's own office to prepare a fraudulent tax return.  See id. In contrast, the Supreme Court of South Carolina has specifically singled out lack of consent as being what separates South Carolina's entering-without-breaking law from burglary.  See Hope v. State, 328 S.C. at 81-82, 492 S.E.2d at 78-79 .  This interpretation might result in a statute of considerable reach, but it is not the Court's job to second-guess how the Supreme Court of South Carolina has interpreted a South Carolina statute.

The categorical approach requires the Court to reach the conclusion that a violation of § 16-13-170 of the South Carolina Code for attempted entry without breaking is not a violent felony.  If the Court were to consider Cunningham's actual conduct, it is likely that it would find his actions to have posed a considerable risk of provoking a violent altercation, similar to the attempted burglary statute discussed in James v. United States.  The Court is precluded, however, from conducting such an inquiry.

Although the Supreme Court left open the possibility of a court's contemplating information outside the statute of conviction in certain situations when it ushered in the categorical approach in Taylor v. United States, this is not one of those situations.  First, Taylor v. United States does not suggest that a court can conduct a searching examination of the actual facts underlying a conviction. Rather, Taylor v. United States holds that a sentencing court can go beyond the statute where the statute is broader than the ACCA definition of an offense and look at, for example, "the indictment or information and jury instructions" to determine what elements a defendant was convicted of violating.  495 U.S. at 602.  In other words, where a statute encompasses multiple possible charges, some of which are violent felonies, a court may look at certain court documents to determine what subset of elements the defendant was convicted of violating.  In the context of a conviction by guilty plea, a court may review materials such as plea agreements, plea colloquy transcripts, or statements

of the factual basis for a charge.  See Shepard v. United States, 544 U.S. at 20; United States v.

Nevels, 490 F.3d 800, 807 (10th Cir. 2007).  Here, no plea colloquy transcripts, plea agreements,

or similar materials are available.  The Court has only an indictment and three sentencing forms.

The forms do not give a statute citation, and as noted earlier, the Court will assume that the statute

of conviction was § 16-13-170.  While the Court has arrest warrant affidavits for the two crimes,

such information cannot be considered.  Accordingly, the Court is only considering the elements of

§ 16-13-170.[16]

---

[16] The Tenth Circuit has recently clarified when a court uses the categorical approach and when it can employ a "modified categorical approach."  While the law is still not completely clear, when a statute is not divisible into separate subparts or element-sets – as in the present case – the pure categorical approach is to be used, because an inquiry into underlying judicial documents is meant only to allow a sentencing court to determine under what subpart or element-set a defendant was convicted.  See United States v. Herrera, 2008 WL 2698644 at *10 (10th Cir. 2008)(slip copy). Whether the modified categorical approach would allow consideration of a warrant affidavit is unclear, although United States v. Herrera suggests that it would not.  See id. ("Using additional materials such as affidavits to ascertain how this person violated a statute departs from the categorical approach.")(quoting United States v. Lewis, 405 F.3d 511, 515 (7th Cir. 2005)). Additionally, although the question is not directly posed in this case, a question that remains unanswered – and perhaps unasked – in the Tenth Circuit, is to what documentation a court can look in identifying the statute of conviction at the outset.  As the Court has noted, despite the possible tension between the underlying judicial documents and the PSR and parties' determination of the statute of conviction, the Court believes that it must assume § 16-13-170 of the South Carolina Code is the statute of conviction.  Indeed, as a practical matter, under the pure categorical approach, the Court would perhaps have never even been aware of the tension in a case such as this – with the PSR and the parties in agreement, often no supplemental court documents would even be submitted to the Court.  The pure categorical approach, however, would not seem to apply to the threshold issue of determining the statute of conviction.  Presumably, if the issue were contested, a court would look to judicial documentation to determine the actual statute of conviction, even if the court could not use that same documentation once the statute of conviction was established to determine if the crime was a violent felony.  The issue seems to be one that has received little judicial examination.  The Ninth Circuit has considered the issue, and the case law from the Ninth Circuit suggests that what has been labeled the modified categorical approach – consultation of reliable judicial documents such as plea agreements, judgments, and verdicts – is the appropriate standard for the initial issue of identifying the actual statute of conviction.  See, e.g., United States v. Franklin, 235 F.3d 1165, 1172 (9th Cir. 2000)(using charging document to determine statute of conviction where PSR did not identify statute was reversible error); United States v. Vasquez, 2008 WL 2906522 at *2 (9th Cir.)(noting court may rely on PSR to ascertain statute of conviction if defendant has not objected to the PSR's determination)(slip copy)(unpublished opinion).

James v. United States clarified the categorical approach somewhat, stating that it did not require that "every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 550 U.S. at 1597. What matters is "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id.

The South Carolina statute is a rather unusual law. It is far from clear what an "ordinary case" of entering without breaking is, much less what a standard attempted-entering-without-breaking looks like. Given the scarcity of cases even mentioning the law, it is likely a rarely charged offense. Certainly it is rarely litigated. This lack of South Carolina case law puts the Court at a disadvantage in trying to envision what the average scenario is. Perhaps the statute is merely a plea bargaining chip – a lesser offense the prosecutor can offer when dealing with a relatively minor burglary. Cunningham's actual conduct, for instance, seems to fit squarely within South Carolina's definition of attempted third-degree burglary, which was an available charge, having been enacted the year before. Nonetheless, Cunningham pleaded guilty to attempted entering-without-breaking.

Or perhaps the statute was designed to allow a trial without the need for the prosecution to call a witness to testify to the lack of consent. It might also be a remnant of South Carolina's old statutory scheme. Before 1985, South Carolina defined burglary according to the restrictive, technical common-law meaning of the word. See WATSON, supra, S.C. JURISPRUDENCE, BURGLARY § 2. South Carolina also had a more expansive statute called housebreaking, of which entering without breaking was a lesser-included offense. See id. § 4. In 1985, South Carolina created a more modern three-tiered crime of burglary and repealed the housebreaking statute and the archaic definition of burglary, but left entering without breaking untouched. See id. § 2. Or, finally, it

might be that South Carolina's legislature decided to enact a law with a somewhat unusual scope. There is no indication which, if any, of these theories is true.

The Court believes that, in the absence of any clear indication about the conduct the statute normally applies to, it should construe the statute literally. The statute must also be read in light of South Carolina's third-degree burglary statute and the ruling in Hope v. State. With all that in mind, the appropriate construction of a typical situation under the statute would be an attempted entry, likely with consent, but with a hidden motive to perform some crime once inside. Possible examples of an entry without breaking – aside from the tax-evasion example that the Supreme Court of North Carolina offered – would be someone entering a home with the goal of defrauding the resident, or a repairman entering to fix a busted water heater, but planning to pocket a few items on his way out. Another example might be – given that the statute apparently includes hotel within its definition of house based on Cunningham's conviction – someone renting a room for the purpose of vandalizing the interior or stealing a television once inside.[17] These examples are particularly apt in light of the statute's placement in "Forgery, Larceny, Embezzlement, False Pretenses and Cheats." The crime of attempted entry-without-breaking would be attempts to do any of these. None of these examples present any significant risk of leading to violence. The natural reading of the statute leads to scenarios such as these, involving consensual entry. While it is certainly possible for a person to commit an entry-without-breaking crime by entering without consent or for the purpose of committing violence inside, such acts seem to fit more comfortably within the burglary statutes, which include elements of lack of consent and causing injury or carrying a weapon. See S.C. CODE

_____

[17] It is worth noting that the North Carolina breaking-or-entering statute might also cover such actions. While consent can defeat a charge of unlawful entry, later actions by the defendant once inside may render the consent void ab initio. See State v. Brooks, 178 N.C.App. 211, 214-15, 631 S.E.2d 54, 57 (App.Ct. 2006).

ANN. § 16-11-312 (defining second-degree burglary to include entering a building without consent to commit a crime while using or threatening to use "a dangerous instrument"); id. § 16-11-311 (defining first-degree burglary as the same, if the building is a dwelling).

In sum, the Court concludes that violation of South Carolina's entering-without-breaking statute is not a violent felony within the meaning of the ACCA.  The Supreme Court of South Carolina has made it clear that the statute, unlike burglary, does not require a lack of consent.  This distinguishes the statute from the attempted burglary law at issue in James v. United States, and does so by eliminating the element that is most likely to create a risk that the crime will erupt into violence.  While Cunningham's actual conduct would pose such a threat and could fairly be characterized as being attempted burglary, the Court cannot consider that conduct under the categorical approach.  The Court considers only the South Carolina statute. That statute does not fit within the ACCA's residual provision because it does not pose "a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  Accordingly, the statute is not within the terms of any of the ACCA's three definitions of violent felony and cannot be counted as a predicate offense under the ACCA.

### 5.    Cunningham is not an Armed Career Criminal.

Although the Court overrules most of Cunningham's objections, and finds that his sawed-off shotgun and burglary convictions are properly counted as predicate violent felonies towards applying the ACCA, Cunningham is not an armed-career criminal.  His conviction for attempted burglary, or "entering-without-breaking," is not a violent felony and so cannot be the third predicate offense that would trigger the ACCA.  Accordingly, neither the 15-year mandatory minimum contained in 18 U.S.C. § 924(e), nor the enhancement in U.S.S.G. § 4B1.4(3), apply in this case. The Court finds, however, that the United States has demonstrated by a preponderance of the

evidence that Cunningham possessed a firearm in connection with another felony, namely possession of crack cocaine.  The specific offense enhancement in § 2K2.1(b)(6) applies, raising Cunningham's base offense from 14 to 18.  With a 3-point reduction for acceptance of responsibility pursuant to § 3E1.1(b) and the United States' stipulation in paragraph 7(a) of the Plea Agreement, Cunningham's offense level is 15.  His criminal history category remains IV.  His sentencing range under the advisory Sentencing Guidelines is therefore 30 to 37 months.

**IT IS ORDERED** that the Objections to the Presentence Report are overruled, except for the objection to the inclusion of the Defendant's conviction for attempted burglary – or entering-without-breaking – as a violent felony within the meaning of the Armed Career Criminal Act.  That objection is sustained.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Gregory Fouratt
   United States Attorney
David M. Walsh
   Assistant United States Attorney
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Alonzo J. Padilla
   Assistant Federal Public Defender
Albuquerque, New Mexico

  *Attorney for the Defendant*

-50-