## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                    No. CR 06-2493 JB

DWAYNE CUNNINGHAM,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Sentencing Memorandum, filed October 30, 2008 (Doc. 48)("Sentencing Memo."). The Court held a continuation of the sentencing hearing on November 5, 2008. The primary issues are: (i) whether Defendant Dwayne Cunningham's base-offense level under U.S.S.G § 2K2.1 should be set at 20 because his burglary conviction was a crime of violence recent enough to earn criminal history points; and (ii) whether Cunningham's criminal history should be category V because his burglary conviction should have been factored into his criminal history. Because the Court concludes that the revocation of Cunningham's probation on the burglary conviction brings the underlying burglary conviction within fifteen years of the commission of the federal offense in this case, the Court will calculate that burglary conviction into Cunningham's criminal history category under the Sentencing Guidelines. The Court cannot, however, using the modified categorical approach, determine his burglary conviction to be a crime of violence, and the Court will therefore not increase his base-offense level.[1]

---

[1] This memorandum opinion and order is based upon the original Presentence Investigation Report ("PSR") that the United States Probation Office ("USPO") disclosed on November 2, 2007. The USPO disclosed another PSR on November 5, 2008, and the Court is aware that there may be

## PROCEDURAL BACKGROUND

On July 27, 2007, Cunningham pled guilty to a one-count Indictment charging him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Plea Agreement ¶ 3, at 2, filed July 27, 2007 (Doc. 36).  The Court held a sentencing hearing on December 17, 2007, but continued the hearing to take Cunningham's objections to the Presentence Investigation Report ("PSR") under advisement.  On October 29, 2008, the Court issued a memorandum opinion and order overruling most of Cunningham's objections to the PSR, but sustaining his objection to the treatment of his 1986 conviction for entering without breaking as a violent felony under the Armed Career Criminal Act ("ACCA").  See Memorandum Opinion and Order at 49-50, entered October 29, 2008 (Doc. 46)("Memo.").  Because the Court sustained this objection, it found that Cunningham was not subject to a mandatory minimum sentence under the ACCA.  See Memo. at 49.  The Court found, however, that Cunningham was subject to a 4-level enhancement pursuant to U.S.S.G. § 2K.1(b)(6) for possessing a firearm in connection with the felony possession of crack cocaine.  See Memo. at 50.  The Court also held that Cunningham's burglary conviction was a violent felony and that there were no other obstacles that prevented it from being used as an ACCA predicate offense.  See Memo. at 49.  Ultimately, the Court calculated Cunningham's base-offense level at 14, with a 4-level enhancement under U.S.S.G. § 2K2.1(b)(6) and a 3-level reduction for acceptance of responsibility, producing a final offense level of 15.  With Cunningham's criminal history at category IV, this resulted in an advisory guidelines range of 30-37 months incarceration.  See Memo. at 50.

In response to the Court's rulings, the United States filed a sentencing memorandum

further developments in this case.  The Court will address further issues, if necessary, in a future opinion.

requesting that the Court find Cunningham's advisory guidelines range to be 57-71 months rather than 30-37 months.  In support of this contention, the United States argues that Cunningham's burglary conviction is a crime of violence, resulting in a base-offense of 20 under U.S.S.G. § 2K2.1. See Sentencing Memo. at 1.  Factoring in the 4-level enhancement and the 3-level reduction, the United States contends that the proper final offense level is 21, leading to a 57-71 months range, given Cunningham's criminal history.  See Sentencing Memo. at 1.

Cunningham responded to the United States' request and argued that the burglary conviction was not available to increase his base-offense level because he had not been assessed any criminal history points for the conviction, which is over 20-years old.  See Response to the Government's Sentencing Memorandum ¶¶ 1-2, at 1-2, filed November 4, 2008 (Doc. 49)("Response"). Cunningham also contends that the United States failed to object to the PSR's determination that the burglary conviction did not add any criminal history points.  See Response ¶ 2, at 2.

On November 4, 2008, the United States filed a supplemental memorandum arguing that Cunningham's burglary conviction was recent enough to count for both his base-offense level and criminal history.  See United States' Supplemental Sentencing Memorandum at 1, filed November 4, 2008 (Doc. 50)("Supp. Memo.").  The United States maintains that 3 criminal-history points should be added for the burglary, because Cunningham was released from incarceration within fifteen years of committing the instant federal offense.  The United States requests that the Court therefore set Cunningham's offense level at 21 and his criminal history category at V, resulting in a guideline range of 70-87 months.  See Supp. Memo. at 1.

## CRIMES OF VIOLENCE UNDER U.S.S.G. § 2K2.1(a)(4)(A)

Section 2K2.1(a)(4)(A) of the Sentencing Guidelines provides that the base-offense level for a defendant sentenced under § 2K2.1 is 20 if "the defendant committed any part of the instant

offense subsequent to sustaining one felony conviction of . . . a crime of violence."  Application

Note 10 to § 2K2.1 specifies that, "[f]or purposes of applying subsection . . . (4)(A), use only those

felony convictions that receive criminal history points under §4A1.1(a), (b), or (c)."

> Section 4B1.2(a) of the Sentencing Guidelines defines a crime of violence as
>
> > any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --
> >
> > . . .
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The United States Court of Appeals for the Tenth Circuit has stated that the Sentencing

"Commission has made it clear that it does not view 'second-degree' or 'unaggravated' burglaries

of structures other than dwellings as crimes of violence. This view is diametrically opposed to the

position taken by Congress, which has defined 'violent crime' in the Armed Career Criminal Act."

United States v. Smith, 10 F.3d 724, 732 (10th Cir. 1993).  The Tenth Circuit went on to note that

"unlawful entry of a non-dwelling for the purpose of stealing property" did not fall in the residual

clause of the Sentencing Guidelines definition of crime of violence.  United States v. Smith, 10 F.3d

at 733.  The Tenth Circuit ultimately held that a second-degree burglary of a commercial building

was not a crime of violence.  See id. at 729-30, 734.

## REVOCATION OF PROBATION AND AGE OF CONVICTIONS UNDER THE SENTENCING GUIDELINES

> Section 4A1.2(e)(1) of the Sentencing Guidelines provides:
>
> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

Application Notes 1 and 2 to § 4A1.1 direct a court to § 4A1.2(k) if the "prior sentence of imprisonment resulted from a revocation of probation."  U.S.S.G. § 4A1.1, comment. (nn.1-2). Section 4A1.2(k)(1) provides: "In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation.  The resulting total is used to compute the criminal history points for §4A1.1(a), (b), or (c), as applicable.  Section 4A1.2(k)(2)(B) provides:

> Revocation of probation . . . may affect the time period under which certain sentences are counted as provided in 4A1.2(d)(2) and (e).  For the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (see §4A1.2(e)(1)); . . . (iii) in any other case, the date of the original sentence (see §4A1.2(d)(2)(B) and (e)(2))).

The Tenth Circuit has interpreted these sections of the Guidelines to

> clearly direct the sentencing judge to add the time of imprisonment served on a revocation of probation to the original sentence imposed. If, having added these terms, the total term of imprisonment exceeds one year and one month, and the defendant's date of last release from incarceration on this sentence is within the fifteen-year time period of section 4A1.2(e)(1), then the conviction is counted as a predicate offense under section 4B1.1 for "career offender" purposes.

United States v. Coleman, 9 F.3d 1480, 1485 (10th Cir. 1993)(citation omitted).  The Tenth Circuit held that, when the sum of the original and revocation sentences exceed thirteen months, the date of last release meant the last release from the revocation sentence.  See id. at 1485-86 ("Coleman's term of imprisonment for his 1977 conviction, including the time served upon revocation of his probation, totaled three years. His date of last release from this sentence was in 1980 [the date he was released from his revocation sentence], which is within fifteen years of the instant offense.").

## ANALYSIS

Cunningham's burglary conviction cannot be considered in determining his base-offense level.  Section 2K2.1(a)(4)(A) of the Guidelines sets a base-offense level of 20 for defendants who

have sustained prior convictions for one crime of violence.  Application Note 10 specifies that only convictions for which criminal history points were assigned can be used, however, in increasing the base-offense level.   While Cunningham did not receive any criminal history points for his 1986 burglary conviction, see PSR ¶ 36, at 10, the Court concludes that the PSR should have assigned points to the conviction because of Cunningham's sentence for violating his probation. Cunningham's criminal history category should be V instead of IV, and the burglary conviction is recent enough to be considered under § 2K2.1(a)(4)(A).  South Carolina's second-degree burglary statute, however, encompasses both violent and non-violent crimes.  The documentation that the Court can consider under the modified categorical approach does not reveal under which subpart of the statute Cunningham was convicted, and so the Court must hold that Cunningham does not have a conviction for a crime of violence.  Accordingly, Cunningham's prior burglary conviction cannot properly increase his base-offense level.

## I.    CUNNINGHAM'S PROBATION REVOCATION BRINGS HIS 1986 BURGLARY CONVICTION WITHIN THE FIFTEEN-YEAR LIMITATION PERIOD.

The Court concludes that Cunningham should receive criminal history points for his burglary conviction in 1986.  He was sentenced on December 10, 1986, to six-years incarceration, with two years suspended, for a total of four years of incarceration.  See PSR ¶ 36, at 10.  This sentence ran concurrent with his sentence for entering without breaking.  Cunningham was released on June 29, 1990, but had his probation revoked on March 13, 1995.  See id.  He was sentenced to twelve-months custody on the probation violation, but was released on August 27, 1995, because he had "[m]axed out" his sentence.  Id.

A prior sentence exceeding one year and one month is counted for criminal history purposes if it was "imposed within fifteen years of the defendant's commencement of the instant offense" or

if the defendant was incarcerated for that prior sentence at any time within that fifteen-year period. U.S.S.G. § 4A1.2(e)(1). Because Cunningham received a sentence of four-years incarceration, this fifteen-year rule applies.

Cunningham was arrested while illegally in possession of a handgun on October 9, 2005. See PSR ¶ 9, at 4. He completed his initial sentence of imprisonment for the burglary on June 29, 1990. The completion of the sentence is several months beyond the fifteen-year limitations period contained in § 4A1.2(e)(1). The initial sentence is thus precluded from consideration. Cunningham, however, received a sentence several years later as a result of having his probation revoked. Ultimately, then, whether Cunningham's burglary conviction counts turns on the treatment of his probation revocation.

Prior sentences resulting from a revocation of probation are considered under § 4A1.2(k). See § 4A1.1, comment. (nn. 1-2)(cross-referencing § 4A1.2(k) for revocation sentences). The relevant portion of that section states:

> Revocation of probation . . . may affect the time period under which certain sentences are counted as provided in 4A1.2(d)(2) and (e). For the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (see §4A1.2(e)(1)); . . . (iii) in any other case, the date of the original sentence (see §4A1.2(d)(2)(B) and (e)(2))).

§ 4A1.2(k)(2)(B). This subsection can plausibly be read two ways. First, it can be interpreted to mean that "an adult term of imprisonment totaling more than one year and one month" refers to the original sentence imposed for the underlying crime, or to the aggregation of the original sentence and the revocation sentence. See § 4A1.2(k)(1) (directing that original term of imprisonment and revocation imprisonment be added together to determine criminal history points). Under this reading, if the initial sentence was at least thirteen months, then any later revocation resulting in

imprisonment would move the date the fifteen-year period begins forward to the date the defendant is released from imprisonment on the revocation sentence. The second interpretation of the language is that the sentence imposed for the revocation -- or the aggregate of multiple revocation sentences -- must exceed thirteen months for the later date to be used. Under this reading, if a defendant were imprisoned less than thirteen months for a probation violation, his or her release from the revocation sentence would not be considered when determining whether a prior conviction is too old to use. Cunningham's probation-revocation sentence was twelve months, of which he served a little more than five months. The first reading would result in this revocation bringing his burglary conviction within the fifteen-year time period; the second reading would result in the burglary conviction being too stale to consider despite his probation being revoked.

The Court concludes that the first reading of the Guidelines is the correct reading, although the second reading has merit.[2] Section 4A1.2(k)(2)(A) states that "[r]evocation of probation . . . may affect the points for §4A1.1(e) in respect to the recency of last release from confinement." Section 4A1.2(k)(2)(B) states that "[r]evocation of probation . . . may affect the time period under which certain sentences are counted as provided in § 4A1.2(d)(2) and (e)." Having a revocation "affect

---

[2] The application notes to § 4A1.1 direct a sentencing court to § 4A1.2(k), but also specifically refer to sentences imposed on the revocation of probation as "prior sentences." § 4A1.1, comment (nn. 1-2). There does not seem to be any inconsistency in treating revocation sentences as independent sentences, subject to the limitations of § 4A1.2(k). Reading the Guidelines this way, § 4A1.2(k)(1) directs a court to aggregate initial sentences and revocation sentences to preclude using a revocation sentence to dramatically increase criminal-history points. For example, this subsection prevents a court from giving 6 criminal-history points for a fourteen-month robbery sentence and a subsequent fourteen-month revocation sentence. Section 4A1.2(k)(2)(B), however, can still be read as applying only to the revocation sentences themselves, which remain "prior sentences." When the revocation sentence is long enough -- that is, when it exceeds thirteen months -- the seriousness of the new sentence warrants using the new date to extend the limitations period. Otherwise, the sentence -- unless it is the special case of a juvenile sentence -- is treated as starting only from the original, underlying date.

. . . certain sentences" makes sense if the revocation sentence is treated as impacting the pre-existing, original sentence.  For the revocation to affect a sentence, the sentence referred to must be the original, underlying sentence that was imposed before release and probation.  Treating the guideline as self-referential does too much damage to the language.  The language draws a distinction between the revocation and the sentence that the revocation affects.  The language does not indicate that the sentence imposed because of the revocation is the sentence that the revocation "affects" -- that is, the revocation is not affecting itself, it is affecting a different sentence.

Additionally, § 4A1.2(k)(2)(b)(i) applies "in the case of an adult term of imprisonment totaling more than one year and one month, [and] the date of last release from incarceration on such sentence" is the date that counting begins.  The guideline uses the word "totaling."  In the context of § 4A1.2(e)(1), the language used is "exceeding one year and one month."  The use of the word totaling, especially in contrast to the use of exceeding elsewhere, implies that the guideline contemplates an aggregation of periods of incarceration to reach the one year and one month period.  Given that § 4A1.2(k)(1) involves adding original periods of incarceration to later periods of imprisonment resulting from revocation for determining the assessment of criminal-history points under § 4A1.1(a)-(c), it is more natural to read the aggregation in § 4A1.2(k)(2)(B)(i) in a similar manner.  The aggregation would thus involve including the original period of time imposed, rather than restricting aggregation to allow for the aggregation of revocation sentences only in a situation where an offender violates the same probation multiple times and receives several revocation sentences.  Ultimately, then, even if a revocation sentence was under thirteen months, if the aggregate of the revocation sentence and the initial sentence exceeded thirteen months, the date upon which the fifteen-year clock began to run would be extended to a defendant's release from the revocation sentence.

This reading finds support in the case law from the Tenth Circuit and elsewhere.  As the Tenth Circuit stated in United States v. Coleman, in the context of discussing the application of §§ 4A1.2(e) and (k)(2)(B):

> These guidelines clearly direct the sentencing judge to add the time of imprisonment served on a revocation of probation to the original sentence imposed. If, having added these terms, the total term of imprisonment exceeds one year and one month, and the defendant's date of last release from incarceration on this sentence is within the fifteen-year time period of section 4A1.2(e)(1), then the conviction is counted as a predicate offense under section 4B1.1 for "career offender" purposes.  Coleman's term of imprisonment for his 1977 conviction, including the time served upon revocation of his probation, totaled three years. His date of last release from this sentence was in 1980, which is within fifteen years of the instant offense.

United States v. Coleman, 9 F.3d at 1485-86 (citation omitted).  Other circuits have used this same approach.  See, e.g., United States v. Shannon, 449 F.3d 1146, 1148 (11th Cir. 2006)("Thus, the court ordinarily should count a conviction that is imposed, and on which the defendant is paroled, outside the window, when the defendant later -- within the window -- is incarcerated for breaching the conditions of his parole.")(internal quotation omitted); United States v. Semsak, 336 F.3d 1123, 1128 (9th Cir. 2003)("Although Semsak was initially released from his imprisonment for the original crimes more than fifteen years prior to the drunk-driving accident in this case, a parole revocation for those original crimes returned Semsak to prison less than fifteen years before the accident.  See U.S.S.G. § 4A1.2(k)(2)(A).").

The argument that revocation sentences should push forward the start-date of the limitations period only if the revocation sentences exceed thirteen months is a plausible interpretation.  The language of § 4A1.2(k)(2) is therefore arguably ambiguous and should be construed in favor of defendants.  See United States v. Weidner, 437 F.3d 1023, 1046-1047 (10th Cir. 2006)(holding that rule of lenity applies post-Booker to ambiguous provisions of the Sentencing Guidelines).  For this District Court, however, the Tenth Circuit's language in  United States v. Coleman removes any

ambiguity inherent to the language of the Sentencing Guidelines.  Accordingly, Cunningham's

revocation sentence pushes forward the start-date of the fifteen-year limitations period to his release

from the imprisonment imposed for the revocation.  That date, August 27, 1995, is within fifteen

years of his commission of the instant offense.  The burglary conviction is therefore recent enough

to be used for determining his criminal history.

## II.   SECOND-DEGREE   BURGLARY   IN   SOUTH   CAROLINA   IS   NOT AUTOMATICALLY A CRIME OF VIOLENCE.

Section 4B1.2(a) of the Sentencing Guidelines defines a crime of violence as

> any offense under federal or state law, punishable by imprisonment for a
> term exceeding one year, that –
> . . .
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives,
>     or otherwise involves conduct that presents a serious potential risk of
>     physical injury to another.

Cunningham's burglary conviction, as his sentencing forms for the crime indicate, was for second-

degree burglary.  See Government's Exhibits 1, 3 to the December 17, 2007 Hearing.  As the Tenth

Circuit has recently held, when a statute is divisible into separate subparts or element-sets, a court

should employ the modified categorical approach.  See United States v. Herrera, 2008 WL 2698644

at *10 (10th Cir. 2008)(slip copy).  South Carolina's second-degree burglary statute is divisible into

several different element-sets.  See S.C. CODE ANN. § 16-11-312.  A person can be convicted under

the statute for: (i) entering "a dwelling without consent and with intent to commit a crime therein,"

id. § 16-11-312(A); or (ii) entering "a building without consent and with intent to commit a crime

therein" if certain other elements are met, id. § 16-11-312(B).  The statute can thus be divided into

a subpart requiring entering a dwelling and a subpart requiring only entering a building, the latter

of which can be further split into several different subdivisions.  Accordingly, the Court will apply

the modified categorical approach in an effort to determine under which subpart of the statute Cunningham was convicted.

The available court documents that the Court may inspect under the modified categorical approach do not reveal which subpart of the second-degree burglary statute Cunningham violated. The documents state only that Cunningham pleaded guilty to and was convicted of second-degree burglary, without any further specificity. The sole document that could clear this up is an arrest-warrant affidavit.[3] That affidavit, however, is something the Court cannot consider under the modified categorical approach. While the Tenth Circuit has not expressly held that resort to such affidavits is impermissible, United States v. Herrera strongly suggests that consideration of the affidavit would be error. See 2008 WL 2698644 at *10 (("Using additional materials such as affidavits to ascertain how this person violated a statute departs from the categorical approach.") (quoting United States v. Lewis, 405 F.3d 511, 515 (7th Cir. 2005)); United States v. Herrera, 2008 WL 2698644 at *10 ("Thus, by examining the court documents, there may be an indication as to which element set the individual was charged with and convicted under -- not what the defendant actually did to the victim.").

Because the Court cannot identify the particular subpart under which Cunningham was convicted, the Court must assume that Cunningham could have been convicted of either burglarizing a dwelling or burglarizing any other building. Burglary of a building is of course not "burglary of a dwelling" and so is not a crime of violence under that provision. U.S.S.G. § 4B1.2(a)(2). If Cunningham's burglary conviction is a crime of violence, it must fall within the residual clause of

---

[3] Even if the Court could consider the affidavit it might not clear up the situation. The affidavit describes a police officer's view of Cunningham's conduct, but does not state what charges the prosecutor decided to file.

the definition, which covers crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id.

While the Court held in its earlier opinion that Cunningham's burglary conviction could be a predicate offense under the ACCA, that does not automatically translate into the conviction being a crime of violence. While the definitions of violent felony and crime of violence are similar, burglary is one area in which they diverge. Crime of violence expressly includes only burglary of a dwelling, see § 4B1.2(a)(2), while violent felony expressly covers all burglaries, see 18 U.S.C. 924(e)(2)(B)(ii).

The South Carolina second-degree burglary statute contains two subparts proscribing conduct that is not obviously violent and which, because the exact subpart of conviction is unknown, form the baseline for determining whether the statute as a whole falls within the residual clause. These two subparts both involve entering "a building without consent and with intent to commit a crime therein," plus the presence of an additional factor, either: (i) being "committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both," S.C. CODE ANN. § 16-11-312(B)(2); or (ii) the "entering or remaining occurs in the nighttime," id. § 16-11-312(B)(3).

James v. United States, 550 U.S. 192, 127 S.Ct. 1586 (2007), suggests that the less obviously dangerous conduct these subparts proscribe nonetheless poses a high risk of erupting into violence. James v. United States held that attempted burglary was a violent felony under the ACCA's residual definition of a violent felony. The Supreme Court noted that the risk of injury created by burglary was not in the physical invasion of another's property, but in "the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate." Id., 127 S.Ct. at 1594.

-13-

One problem with transplanting the holding in <u>James v. United States</u> into the context of the definition of a crime of violence, however, is that it renders the express inclusion of "burglary of a dwelling" as a crime of violence superfluous.  If all burglaries were crimes of violence under the residual definition, there would be no need to single out burglaries of dwellings as being included. Furthermore, the principle of <u>ejusdem</u> <u>generis</u> implies that burglary of a dwelling is representative of the level of danger the definition envisions.  If burglary of a dwelling was chosen as representative, rather than simple burglary, this choice indicates that not all burglaries are considered to present a sufficiently high risk of violence to warrant being considered crimes of violence.  This canon of construction indicates that, despite the similar language in the two residual provisions,[4] they should be interpreted as having different reaches, particularly when dealing with a burglary crime.[5]

South Carolina, however, has a narrow definition of building for the purposes of its burglary statutes.  As used in the second-degree burglary statute:

(1) "Building" means any structure, vehicle, watercraft, or aircraft:

(a) Where any person lodges or lives; or

(b) Where people assemble for purposes of business, government, education, religion, entertainment, public transportation, or public use or where goods are stored.  Where a building consists of two or more units separately

---

[4] <u>Compare</u> U.S.S.G. § 4B1.2(a) ("any offense under federal or state law, punishable by imprisonment for a term exceeding one year . . . [that] involves conduct that presents a serious potential risk of physical injury to another"), <u>with</u> 18 U.S.C. § 924(e)(2)(B)(ii) ("any crime punishable by imprisonment for a term exceeding one year . . . [that] involves conduct that presents a serious potential risk of physical injury to another.")

[5] It is worth noting that the Supreme Court specifically relied on the ACCA's listing of burglary in giving content to the residual definition.  <u>See</u> <u>James v. United States</u>, 127 S.Ct. at 1594 ("In this case, we can ask whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses-here, completed burglary.").

occupied or secured, each unit is deemed both a separate building in itself
and a part of the main building.

S.C. CODE ANN. § 16-11-310(1).  This narrowing definition mitigates the problem of bringing

additional burglary statutes under the crime of violence label through the residual clause.

The Tenth Circuit, though, has adopted a restrictive reading of the definition of crime of

violence and particularly of the scope of the residual clause.  The Tenth Circuit has stated that the

Sentencing "Commission has made it clear that it does not view 'second-degree' or 'unaggravated'

burglaries of structures other than dwellings as crimes of violence. This view is diametrically

opposed to the position taken by Congress, which has defined 'violent crime' in the Armed Career

Criminal Act." United States v. Smith, 10 F.3d 724, 732 (10th Cir. 1993).[6]  The Tenth Circuit went

on to note that "unlawful entry of a non-dwelling for the purpose of stealing property" did not fall

in the residual clause of the Sentencing Guidelines' definition of crime of violence.  United States

v. Smith, 10 F.3d at 733.  The Tenth Circuit ultimately held that a second-degree burglary of a

commercial building was not a crime of violence.  See id. at 729-30, 734.

While James v. United States may suggest that more burglaries should be considered as

entailing a significant risk of physical injury to others, the Tenth Circuit's decision in United States

v. Smith requires that the Court take a limiting approach to the definition of crime of violence.

James v. United States is also distinguishable from the present case.  James v. United States relied

on an assessment that attempted burglary might pose a greater risk than completed burglary, see 127

S.Ct. at 1595, and was also dealing with the ACCA's definition of a violent felony, which the Tenth

Circuit has held is narrower than the Sentencing Guidelines' definition of a crime of violence.  See

---

[6] The Tenth Circuit also noted that the Sentencing Guidelines definition of crime of violence
is different than the definition of crime of violence in 18 U.S.C. § 16.

United States v. Smith, 10 F.3d at 733.

Given the Tenth Circuit precedent, the Court cannot say that a violation of South Carolina's second-degree burglary statute is necessarily a crime of violence as the Sentencing Guidelines define the term. Because the Court, in this situation, has to construe the statute as a whole, the baseline that is measured against the definition of crime of violence is entering without consent a place where goods are stored, at nighttime or where the offender has two prior convictions for burglary or housebreaking. See S.C. CODE ANN. §§ 16-11-310(1)(b), 16-11-312(B)(2)-(3). The Tenth Circuit has held that burglary of a commercial building is not a crime of violence. Against that background, the Court must conclude that a burglary of a place where goods are stored at night or by a convicted burglar would also not be a crime of violence.

In sum, the Court concludes that Cunningham's imprisonment on a probation violation requires that his burglary conviction be assigned criminal-history points under the Guidelines, but that the burglary conviction is not a crime of violence under the modified categorical approach. Because Cunningham's total sentence for his burglary conviction exceeded thirteen-months incarceration, Cunningham must be assigned 3 criminal history points for that conviction. See U.S.S.G. § 4A1.1(a). These additional points raise Cunningham's criminal history category to V. Because Cunningham's conviction for second-degree burglary is not a crime of violence, the conviction is not considered under § 2K2.1(a)(4)(A). His final adjusted-offense level remains at 15. An offense level of 15 and a criminal history category of V results in an advisory guidelines range of 37 to 46 months incarceration.

**IT IS ORDERED** that the objections in the United States' Sentencing Memorandum and United States' Supplemental Sentencing Memorandum are sustained in part and overruled in part. The Court will sustain the objection to Defendant Dwayne Cunningham's criminal history category,

but will overrule the objection to his base-offense level.


_____
UNITED STATES DISTRICT JUDGE




*Counsel:*

Gregory Fouratt
  United States Attorney
David M. Walsh
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Alonzo J. Padilla
  Assistant Federal Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*